## NO. 01-14-01022-CV

## IN THE COURT OF APPEALS
## FOR THE FIRST DISTRICT OF TEXAS
## HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
12/29/2014 12:00:00 AM
CHRISTOPHER A. PRINE
Clerk

*In re*

# DAN WHEELER WRECKER SERVICE, INC. AND GREGORY HEMBREE,

*Relators*

The Honorable Randy McDonald,

Presiding Judge of the 344th Judicial District Court of Chambers County, Texas,

Respondent

## APPENDIX

| Title | Date | Tab |
|---|---|---|
| Plaintiff Charles E. Watkins' Second Amended Petition and Request for Disclosure | June 4, 2014 | 1 |
| Defendants Dan Wheeler Wrecker Service, Inc. and Greg Hembree's Motion for Leave to Designate Sammy Wood as a Responsible Third Party | July 3, 2014 | 2 |
| Plaintiff Charles E. Watkins' Second Amended Petition and Request for Disclosure | July 8, 2014 | 3 |
| Plaintiff Charles E. Watkins Objection to Motion to Designate Responsible Third Party of Dan Wheeler Wrecker Service, Inc. | July 16, 2014 | 4 |
| Defendants' Reply to Watkins' Objection to Motion for Leave to Designate Sammy Wood as a Responsible Third Party | August 6, 2014 | 5 |

| | | |
|---|---|---|
| Reporter's Record, Motion for Leave to Designate Responsible Third Party | August 29, 2014 | 6 |
| Agreed Docket Control Order | Oct. 27, 2014 | 7 |
| TEX. CIV. PRAC. & REM. CODE § 33.002 | | 8 |
| TEX. CIV. PRAC. & REM. CODE § 33.004 | | 9 |
| TEX. CIV. PRAC. & REM. CODE § 33.011 | | 10 |
| *In re Lewis Casing Crews, Inc.*, No. 11-14-00137-CV (Tex.App.—Eastland Jul. 10, 2014, orig. proceeding), slip op. | | 11 |
| Tex. R. Civ. P. 47 | | 12 |
| Tex. R. App. P. 44 | | 13 |

*Oral Argument Requested*

**APPENDIX TAB 1**

Filed
6/4/2014 2:34:47 PM
Patti L. Henry
District Clerk
Chambers County, Texas
By:_____Deputy

CAUSE NO. 28384

| | | |
|---|---|---|
| CHARLES E. WATKINS<br>*Plaintiff* | § | IN THE DISTRICT COURT |
| | § | |
| | § | 344th JUDICIAL DISTRICT |
| V. | § | |
| DAN WHEELER WRECKER SERVICE<br>INC., GREGORY "GLEN"HEMBREE<br>, ENVIRO IRON AND METALS L.L.C.,<br>BILAL MALIK d/b/a ENVIRO<br>RECYCLING, d/b/a/ ENVIRO METALS | §<br>§<br>§<br>§<br>§ | OF CHAMBERS COUNTY, TEXAS |
| | § | |
| *Defendants* | § | |

---

### PLAINTIFF CHARLES E. WATKINS
### SECOND AMENDED ORIGINAL PETITION & REQUEST FOR DISCLOSURE

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW CHARLES E. WATKINS, (hereinafter referred to as "Plaintiff"), complaining

of DAN WHEELER WRECKER SERVICE, INC.,(Dan Wheeler) and ENVIRO IRON AND

METALS L.L.C., BILAL MALIK d/b/a ENVIRO RECYCLING, d/b/a/ ENVIRO METALS

(Enviro), (hereinafter sometimes referred to collectively as "Defendants"), and for grounds

therefore would show the Court the following:

### DISCOVERY CONTROL PLAN

1.    Plaintiff intends to conduct discovery under Level 2 of Texas Rule of Civil Procedure

190.4 because this is a complex, multi-party Occupation Code, Deceptive Trade Practice,

Conversion, Theft Liability, and Fraud.

### PARTIES

2.    Plaintiff CHARLES E. WATKINS is a person doing business in Texas with his

domicile and principal place of business in Chambers County, Texas.

*Second Amended Plaintiffs Original Petition*

CERTIFIED TRUE AND CORRECT COPY CERTIFICATE
THE STATE OF TEXAS
COUNTY OF CHAMBERS                                          1
The above and forgoing is a full, true and correct photographic
copy of the original on file and on record in my office.
Containing _____ pages.
Attest _____ AD
PATTI L. HENRY, District Clerk
Chambers County, Texas
By: _____ Deputy



do business in the State of Texas and can be served by registered agent **D. H. Wheeler at 605 West Tidwell, Houston, Texas 77091. Service is requested through the Secretary of State.**

4. Defendant ENVIRO IRON AND METALS, L.L.C., is a domestic limited liability corporation doing business as Enviro Iron and Metals L.L.C., Enviro Recycling and Enviro Metals in Liberty, Texas and can be served by registered agent **Bilal Malik**, at 203 Highway 90 Liberty, TX 77575, or its President, **Husain Dadabhoy**, at 303 Webster Street, #1247, Houston, Texas 77002.

5. Defendant BILAL MALIK d/b/a ENVIRO RECYCLING, d/b/a/ ENVIRO METALS with principal place of business in Liberty, Texas can be served at his usual place of abode, 15507 Copper Branch Lane, Houston, Texas 77095.

6. Defendant Gregory "Glen" Hembree, is an individual who can be served at his usual abode which is 7021 Highway 146 North, Baytown, Chambers County, Texas 77523

## JURISDICTION

6. The causes of action set forth herein arise out of a series of transactions and events which made the basis of Plaintiff's claims in this lawsuit. Damages are unliquidated and exceed the minimal jurisdictional limits of this Court. These claims are based upon acts carried out by the Defendants principally in Harris, Chambers and Liberty Counties, Texas. Jurisdiction is therefore proper in this Court.

## VENUE

7. This suit involves an unauthorized removal of property and retention of said property belonging to Plaintiff by Defendants. These events occurred in Harris, Chambers, and Liberty County. Therefore, venue is proper in this County under TEX. CIV. PRAC. & REM. CODE §15.002.

*Second Amended Plaintiffs Original Petition*     2



## FACTS

8.     On or about October 11, 2012, Plaintiff's 1979 Peterbilt 359 and 1988 Trailmobile 45 foot flatbed trailer was stolen from a truck stop on Interstate 10 and North Main (Valero) in Baytown, Texas. This was discovered Sunday, October 12 by plaintiff's son, Charles Kevin Watkins, upon driving by the truck stop at Interstate 10 and Main Street and observing that Plaintiff's truck and trailer were missing. Plaintiff contacted Baytown Police Department who talked to the attendants that ran the truck stop and it was observed on video camera that an 18 Wheeler wrecker owned by Defendant, Dan Wheeler Wrecker Service Inc, driven by Defendant Hembree. had towed Plaintiff's truck and trailer off the premises. Baytown police were informed by the attendants at the truck stop that they did not request for this vehicle to be removed and subsequently had talked to the operator of the wrecker Defendant Hembree who told them that he towed the truck and trailer without any proof of ownership paperwork and had towed it to Enviro Metals and Iron LLC in Liberty, Texas to be scrapped.

9.     Plaintiff arrived at that facility on or about October 13, 2012 to find his 1979 Peterbilt and 1988 Trailmobile trailer on the premises. Malik, of Enviro Metals and Iron LLC, stated to Plaintiff that Dan Wheeler was accompanied by a man and two other people who stated the truck belonged to him. Although no title was ever presented, Malik & Enviro subsequently purchased the vehicle without title from these unidentified people and paid approximately $2500 for said truck and trailer. Malik (Enviro) admitted to Charles Watkins that on the day that the truck was delivered to the scarp yard there was a problem in that Defendant Wheeler's operator was not going to release Plaintiff's truck and trailer when it arrived until he was paid $500 for towing;



which Defendant Enviro did and also by issuing a check to an unknown person claiming the truck and trailer was theirs in the amount of $2500 which was subsequently cashed down the street. Defendant Wheeler's employee was paid, and Plaintiff's truck and trailer was towed into the scrap yard facility by defendant Wheeler's employee.

10. Dan Wheeler's operator did not check for a title from the unknown person who purported to own Plaintiff's truck and trailer, nor for any type of registration, ownership papers, insurance, or any fact of ownership, or even a key for said truck and trailer. Nor did defendant Wheeler's operator inform the Baytown Police Department that the vehicle had been towed as required by operating rules and procedures inside the city limits of Baytown for towing companies, not to mention that state law requires a tow truck operator to have consent of the owner of the truck or trailer in order to tow it. See the Baytown Municipal Ordinance attached as Exhibit 1. Additionally, Enviro purchased the Plaintiff's truck and trailer without any type of ownership papers or title to the truck and trailer. These facts were considered by law enforcement in order to file the truck and trailer as stolen.

11. Baytown Police Department has charged the man who was issued the check for payment of Plaintiff's truck and trailer for the theft of the truck and trailer. Since this date, the plaintiff's truck and trailer have remained on Enviro's property, Malik (Enviro) has admitted to Plaintiff that a law enforcement official had instructed them to leave the truck parked on the premises until it was cleared for removal. Plaintiff has sold the trailer to Defendant Enviro for its salvage value. What remains in dispute is the damage to the tractor and trailer. Upon viewing the same, the condition and damages caused by the means of towing reveals to visual inspection only one conclusion that the value is nothing but the salvage value for both. Defendant Enviro is operating this scrap yard without the appropriate and mandated licensing through the Texas



Department of Public Safety as promulgated by the Texas Occupations Code nor did it report the unauthorized tow as required by statute. Subsequent to the acts that have individuals either acting in concert with the defendants have approached and attempted to convince Plaintiff by and through his son not to pursue this claim or they would give negative testimony as to the value of the vehicle and or intimidate Plaintiff son to the extent that he would not stand up for his rights and remedies as afforded by statute.

## DECLARATORY JUDGMENT ACT SECTION 37.000 ET SEQ OF THE TEXAS CIVIL PRACTICE AND REMEDIES CODE & TEXAS OCCUPATIONAL CODE SECTION 2308 ET SEQ

12. Plaintiffs's 18 wheel tractor and trailer were towed as an unauthorized tow. Plaintiff is entitled to the remedies as set forth by statute below which would include the cost of towing the salvaged vehicle to a location of his choice within Chambers County. Plaintiff requests that this court find, pursuant to the Declaratory Judgment Act and pursuant to the Occupations Code, a finding that the tow by Defendant Wheeler was unauthorized, that the failure to report the unauthorized truck by Defendant Enviro was in violation of the Occupations Code and the operating of the scrap yard facility without a license is a violation of the Texas Transportation Code.

## Sec. 2308.404. CIVIL LIABILITY OF TOWING COMPANY OR PARKING FACILITY OWNER FOR VIOLATION OF CHAPTER.

(a) A towing company or parking facility owner who violates this chapter is liable to the owner or operator of the vehicle that is the subject of the violation for:

(1) damages arising from the removal or storage of the vehicle; and

(2) towing or storage fees assessed in connection with the vehicle's removal or storage.



(b) A vehicle's owner or operator is not required to prove negligence of a parking facility owner or towing company to recover under Subsection (a).

(c) A towing company or parking facility owner who intentionally, knowingly, or recklessly violates this chapter is liable to the owner or operator of the vehicle that is the subject of the violation for $300 plus three times the amount of fees assessed in the vehicle's removal, towing, or storage.

(d) In a suit brought under this chapter, the prevailing party is entitled to recover reasonable attorney's fees.

Sec. 1956.021. Texas Occupations Code : REGISTRATION REQUIRED. A person may not act as a

metal recycling entity or represent to the public that the person

is a metal recycling entity unless the person is registered under

this chapter.

Added by Acts 2007, 80th Leg., R.S., Ch.

1316, Sec. 2, eff. September 1, 2007.

## DAMAGES

13. Plaintiff seeks damages for conversion, actual damages, theft liability act, civil liability and State violations, together with additional un-liquidated incidental damages in an amount that is within the jurisdictional limits of the court.

## NEGLIGENCE

14. As a consequence of the foregoing facts, Dan Wheeler Wrecker Service, Inc. (Dan Wheeler), Enviro Iron and Metals LLC., Bilal Malik d/b/a Enviro Recycling, d/b/a/ Enviro Metals are liable for actual damages. Defendants (1) owed a legal duty to Plaintiff to operate and supervise their agents servants and employees to operate their respective businesses within the foregoing statutes; (2) Defendants breached their duty to Plaintiff; and (3) damages proximately



resulted from Defendants' breach. *Foster v. Denton Indep. Sch. Dist.*, 73 S.W.3d 454, 465 (Tex. App. Fort Worth 2002).

## NEGLIGENCE PER SE

15. Defendants' duty to Plaintiff was based on a standard of conduct created by a statute in addition to the reasonably prudent person test used in pure negligence claims. *Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1997). The statute itself states what a reasonably prudent person would have done. *Supreme Beef Packers, Inc. v. Maddox*, 67 S.W.3d 453, 455 (Tex. App. Texarkana 2002). Defendants violated the statute and the violation was the proximate cause of the Plaintiff's injury. *Id.* An administrative regulation may also form the basis of negligence per se. *Freudiger v. Keller*, 104 S.W.3d 294, 296 (Tex. App. Texarkana 2003). Plaintiff belongs to the class that the statute was intended to protect and the Plaintiff's injury is of a type that the statute was designed to prevent. *Perry v. S.N.*, 973 S.W.2d 301, 305 (Tex. 1998).

## RESPONDEAT SUPERIOR

16. Defendants, as employers, are vicariously liable for the tortious acts of their employees specifically Defendant Dan Wheeler is liable for the acts of Defendant Hembree under the doctrine of Respondeat Superior. *Knutson v. Morton Foods, Inc.*, 603 S.W.2d 805, 807 (Tex. 1980); *Lewis v. Exxon Co., U.S.A.*, 786 S.W.2d 724, 732 (Tex. App. El Paso 1989). Respondeat Superior imposes liability on Defendant employers when the negligence of their employees, acting in the scope of their employment, was the proximate cause of Plaintiff's injury. *DeWitt v. Harris County*, 904 S.W.2d 650, 654 (Tex. 1995); *Marange v. Marshall*, 402 S.W.2d 236, 239 (Tex. 1966).



## CONVERSION

17. Plaintiff owned or had possession of the property or entitlement to possession; Defendants unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the Plaintiff's rights as an owner; the Plaintiff demanded return of his property; and Defendants refused to return the property. Defendants are liable to Plaintiff for damages incurred resulting from the conversion of his property.

## CIVIL THEFT
## UNDER THE TEXAS THEFT LIABILITY ACT

19. Pursuant to the Tex. Civ. Prac. & Rem. Code §§ 134.002(2), 134.003(a) and Tex. Penal Code § 31.03(b), Defendants unlawfully appropriated Plaintiff's property with the intent to deprive Plaintiff of the property without Plaintiff's effective consent. Defendants are liable to Plaintiff for damages incurred as a result of that theft.

## COMMON LAW FRAUD

20. A material representation was made by Defendants; the representation was false; when the representation was made, the speaker knew it was false or made the statement recklessly without any knowledge of truth and as a positive assertion; the representation was made with the intention that it be acted upon by the Plaintiff; the Plaintiff acted in reliance upon the representation; and Plaintiff suffered damages. Plaintiff has suffered and continues to suffer economic and non-economic losses because of the wrongful conduct of the Defendants.

## CIVIL CONSPIRACY

21. Defendants, who were all aware and intended, with specific intent, the harm or wrongful conduct at the inception of their combination or agreement, conspired to accomplish an unlawful



objective and/or achieve a lawful objective by unlawful means; Defendants had a meeting of the minds on the objective or course of action; in furtherance of the conspiracy, one or more unlawful overt acts transpired; and Plaintiff suffered damages as a proximate result of Defendants' wrongful acts. Plaintiff has suffered and continues to suffer economic and non-economic losses because of the wrongful conduct of the Defendants.

## AIDING AND ABETTING

22. The Defendants aided and abetted one another in committing torts against Plaintiff.

23. Defendants had a duty to Plaintiff and breached that duty; the Defendants had knowledge that the Primary Actor's conduct constituted a breach of that duty; the Defendants had the intent to assist the Primary Actor in committing a tort; the Defendants gave the Primary Actor assistance or encouragement; the Defendants' assistance or encouragement was a substantial factor in causing the tort; damages to the Plaintiff resulted from that tort.

24. Accordingly, Plaintiff respectfully requests that exemplary damages be awarded against the Defendants in a sum that is not less than three (3) times the amount of Plaintiff's actual damages.

## JOINT ENTERPRISE

25. The Defendants were engaged in a joint enterprise in committing torts against Plaintiff.

26. The Defendants had an express and implied agreement; a common purpose; a community of pecuniary interest; and an equal right to a voice in the direction of the enterprise. The joint enterprise of Defendant caused damages to the Plaintiff resulting from those torts.

## CONCERT OF ACTION
## AND PARTICIPATORY AND VICARIOUS LIABILITY

27. The Defendants were in concert of action in committing torts against Plaintiff.

28. The Defendants committed an intentional tort or were grossly negligent; the tort was a

highly dangerous, deviant, or antisocial group activity likely to cause harm; the Defendants agreed (explicitly or tacitly) to cooperate in a particular plan or to accomplish a particular result; the Defendants' own conduct was tortious; the tortious conduct of the Defendants caused the Plaintiff's injury.

29. As a consequence of the foregoing, Defendants are liable for actual and economic damages that are provided by statute (see statutory references above).

30. As a consequence of the foregoing, Defendants are liable for actual and consequential damages.

31. Plaintiffs are entitled to recovery of pre-judgment and post-judgment interest as provided by law

## EXEMPLARY DAMAGES

33. Plaintiff's injury resulted from Defendants' gross negligence, malice, conversion and / or actual fraud, which entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a).

## ATTORNEY FEES

34. Plaintiff is entitled to recover reasonable and necessary attorney fees under §37.009 of the Texas Civil Practice & Remedies Code. Additionally, Plaintiff is entitled to attorney fees as per 23.08 of the Texas Occupations Code.

## CONDITIONS PRECEDENT

35. All conditions precedent to Plaintiff's claim for relief have been performed or have occurred.

## DEMAND FOR JURY

36. Plaintiff demands a jury trial and has tendered the appropriate fee.

*Second Amended Plaintiffs Original Petition*                                    10



## REQUEST FOR DISCLOSURE

37.     Under Texas Rule of Civil Procedure 194, Plaintiff requests that each Defendant disclose,

within 30 days of the service of this request, the information or material described in Rule 194.2.

## PRAYER

38.     For these reasons, Plaintiff asks that Defendants be cited to appear and answer and that

Plaintiff have judgment against defendants for the following:

        a.      Actual damages.

        b.      Attorney fees.

        c.      Pre-judgment and post-judgment interest.

        d.      Costs of suit.

        e.      Consequential damages

        f.      Special damages of lost profits, reliance, restitution, incidental damages.

        g.      Exemplary & Statutory Damages

        h.      All other relief, in law and in equity, to which plaintiff may be entitled.

Respectfully submitted,

Frederick F. Hoelke
State Bar No. 09775600
26545 I H 10 West, Suite 100
Boerne, Texas 78006
Telephone: 210-444-0999
Facsimile : 210-444-0996
fredhoelke@aol.com
Attorney for Plaintiff

*Second Amended Plaintiffs Original Petition*                                                11



## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of June, 2014, the PLAINTIFF'S SECOND AMENDED ORIGINAL PETITON  was served to the following  counsel at the address and/or facsimile number or email address or hand delivery or as indicated and or listed below:

**NICHOLAS J. LANZA &  STEWART SCHMELLA**
4950 BISSONET
Bellaire, Texas  77401                                   ___ Facsimile Transmission
Telephone:  (713) 523-0400                         ⋀ First Class Mail USPS
Facsimile:   (713) 668-6417                         ___ Hand Delivery
ATTORNEY for                                             ___ Electronic Mail
Dan Wheeler Wrecker Service, Inc.           ___ Certified Mail RRR
*nlanza@mlm-lawfirm.com*



FREDERICK T. HOELKE

*Second  Amended Plaintiffs Original Petition*                              12



**APPENDIX TAB 2**

Filed
7/3/2014 3:06:44 PM
Patti L. Henry
District Clerk
Chambers County, Texas
By_____ Deputy

CAUSE NO. 28384

| | | |
|---|---|---|
| CHARLES E. WATKINS | § | IN THE DISTRICT COURT OF |
| VS. | § | |
| | § | |
| DAN WHEELER WRECKER | § | |
| SERVICE INC., ENVIRO IRON | § | CHAMBERS COUNTY, TEXAS |
| AND METALS L.L.C., BILAL | § | |
| MALIK d/b/a ENVIRO | § | |
| RECYCLING, d/b/a ENVIRO | § | |
| METALS | § | 344TH JUDICIAL DISTRICT |

## DEFENDANTS DAN WHEELER WRECKER, INC. AND GREG HEMBREE'S MOTION FOR LEAVE TO DESIGNATE SAMMY WOOD AS A RESPONSIBLE THIRD PARTY

Defendants Dan Wheeler Wrecker Service, Inc. ("Dan Wheeler") and Greg Hembree ("Hembree") (collectively the "Wheeler Defendants") file its Motion for Leave to Designate Sammy Wood ("Wood") as a Responsible Third Party.

**1. Relief Requested.**

The Wheeler Defendants request that the Court grant leave to designate Wood as a Responsible Third Party.

**2. Summary of Motion.**

This case involves a person, Sammy Wood ("Wood"), who lied about his ownership of a tractor/trailer and convinced the Wheeler Defendants to tow the tractor/trailer to a scrap yard. After completing the tow, the Wheeler Defendants discovered Wood did not own the tractor/trailer at issue. Wood has pleaded guilty to theft for his actions. The owner of the tractor/trailer, Plaintiff Charles E. Watkins ("Watkins"), has sued the Wheeler Defendants. Because Wood's criminal acts caused the injuries for which Watkins now sues

CERTIFIED TRUE AND CORRECT COPY CERTIFICATE
THE STATE OF TEXAS
COUNTY OF CHAMBERS
The above and forgoing is a full, true and correct photographic
copy of the original on file and on record in my office.
Containing _____ pages.
Attest _____ AD
PATTI L. HENRY, District Clerk
Chambers County, Texas
By: _____ Deputy



the Wheeler Defendants, the Wheeler Defendants are entitled to submit the conduct of Wood to the jury as a Responsible Third Party.

3.    Facts and Procedural History.

Watkins contends that on November 10, 2011, the Wheeler Defendants improperly towed a vehicle belonging to Watkins to a scrap metal facility in Liberty, Texas. Watkins contends the Wheeler Defendants "did not check for a title from the unknown person who purported to own [Watkins'] truck and trailer, nor for any type of registration, ownership papers, insurance, or any fact of ownership, or even a key for said truck or trailer." Watkins' Second Am. Pet., at ¶ 10. As Watkins acknowledges, "Baytown and or Liberty police departments have charged the man who was issued the check for payment of [Watkins'] truck and trailer for the theft of the truck and trailer." *Id.* at ¶ 11.

Wood is the unknown person who was charged for theft in connection with the events complained of by Watkins. Harris County charged Wood for his part in deceiving Dan Wheeler into towing the vehicle at issue. Exhibit "A," Complaint, Cause No. 1373437, *State v. Sammy Wood*, in the 338th District Court of Harris County, Texas. Wood subsequently pleaded guilty to theft. Exhibit "B," Judgment of Conviction by Court— Waiver of Jury Trial, Cause No. 1373437, *State v. Sammy Wood*, in the 338th District Court of Harris County, Texas (Apr. 10, 2014).

Watkins has sued the Wheeler Defendants, alleging the following torts: negligence; negligence *per se*; conversion; violation of the Texas Theft Liability Act; fraud; and violation of Texas Occupations Code § 2308.404. As of the date of this Motion, the Court has not set this matter for trial or entered a Docket Control Order. Consequently, the Wheeler

2

Defendants have filed this Motion for Leave to Designate Responsible Third Parties in a timely manner. *See* TEX. CIV. PRAC. & REM. CODE § 33.004(a).

## 4. Motion for Leave.

### 4.1. Legal Standard.

A responsible third party is "any person who is alleged to have caused or contributed to causing in any way the harm for which the recovery of damages is sought," whether by negligence or other conduct which falls below a legal standard. TEX. CIV. PRAC. & REM. CODE § 33.011(6). A defendant may seek to designate a person as a responsible third party by filing a motion for leave with the court. TEX. CIV. PRAC. & REM. CODE § 33.004(a).

The Court must grant leave to designate unless another party objects within 15 days after the motion is served. *Id.* at (g). If a party objects, the Court must nonetheless grant leave unless the objecting party establishes (1) the moving party did not plead sufficient facts concerning the alleged responsibility of the person to satisfy the fair notice standard under the Texas Rules of Civil Procedure and (2) after having been granted leave to replead, the moving party failed to plead sufficient facts. *Id.*

The responsible third party framework applies to any cause of action based on tort for which defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought. TEX. CIV. PRAC. & REM. CODE § 33.002(a)(1). Chapter 33 applies to negligence claims. *JCW Electronics, Inc. v. Garza*, 257 S.W.3d 701, 704-05 (Tex. 2008). Chapter 33 applies to fraud claims. *Isaacs v. Bishop*, 249 S.W.3d 100, 116-17 (Tex.App.—Texarkana 2008, pet. denied). For purposes of the responsible third party statute, actions "based on tort" include "statutory tort claims that do

3



not include a separate and conflicting fault allocation scheme, *Werner v. KPMG LLP*, 415 F.Supp.2d 688, 703 (S.D.Tex. 2006)(Rosenthal, J.).

### 4.2. The Wheeler Defendants Are Entitled to Designate Wood As A Responsible Third Party.

The Wheeler Defendants are entitled to submit the conduct of Wood to the jury as a Responsible Third Party. Wood has been convicted of the crime giving rise to this lawsuit. *See* Exhibit "B." There is little doubt that Wood is a person who is alleged to have caused or contributed to causing in any way the harm for which Watkins seeks to recover damages. *See* TEX. CIV. PRAC. & REM. CODE § 33.011(6). In fact, Wood has been found guilty of that conduct. Exhibit "B." Consequently, the Court should grant leave for Dan Wheeler to designate Wood as a Responsible Third Party.

### 5. Prayer.

The Wheeler Defendants respectfully request that the Court award the following relief:

- grant the Wheeler Defendants leave to designate Wood as a Responsible Third Party;

- award such other and further relief to which the Wheeler Defendants may be justly entitled.

Respectfully submitted,

MCCORMICK, LANZA & MCNEEL, L.L.P.

NICHOLAS J. LANZA
TBA No. 11941225
STEWART K. SCHMELLA

4



TBA No. 24033041
4950 Bissonnet
Bellaire, Texas 77401
713-523-0400
713-668-6417 fax
nlanza@mlm-lawfirm.com
sschmella@mlm-lawfirm.com

**ATTORNEYS FOR DEFENDANT DAN WHEELER WRECKER SERVICE, INC.**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document was sent as described below on July 3, 2014.

*Via Email: fredhoelke@aol.com*
Frederick F. Hoelke
26545 I H 10 West, Suite 100
Boerne, Texas 78006

NICHOLAS J. LANZA/
STEWART K. SCHMELLA

5



THE STATE OF TEXAS
VS.

SAMMY  WOOD
136 WOODWARD RD
LUFKIN, TX  75901

02033057

SPN:
DOB: WM 04-06-86
DATE PREPARED: 1/10/2013

D.A. LOG NUMBER:1922483
CJIS TRACKING NO.:

BY: AZ  DA NO: 002327599
AGENCY:BAYTOWN PD
O/R NO: 201244659
ARREST DATE: **TO BE**

NCIC CODE: 2300 75

RELATED CASES:

FELONY CHARGE:  THEFT
CAUSE NO:
HARRIS COUNTY DISTRICT COURT NO:
FIRST SETTING DATE:

1373439
338

BAIL: $15,000
PRIOR CAUSE NO:

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas, SAMMY WOOD, hereafter styled the Defendant, heretofore on or about NOVEMBER 11, 2012, did then and there unlawfully, appropriate, by acquiring and otherwise exercising control over property, namely, ONE TRACTOR-TRUCK AND ONE TRAILER owned by CHARLES WATKINS JR, hereafter styled the Complainant, of the value of over one thousand five hundred dollars and under twenty thousand dollars, with the intent to deprive the Complainant of the property.

Unofficial Copy Office of Chris Daniel District Clerk

EXHIBIT
"A"

FILED
Chris Daniel
District Clerk
NOV 27 2013
Time:

AGAINST THE PEACE AND DIGNITY OF THE STATE.

Foreman                    262nd

FOREMAN OF THE GRAND JURY

INDICTMENT





CASE NO. 137343901010
INCIDENT NO./TRN: 9169444846A001

| THE STATE OF TEXAS | § | IN THE 338TH DISTRICT |
| v. | § | COURT    **P2** |
| WOOD, SAMMY | § | HARRIS COUNTY, TEXAS |
| STATE ID NO.: TXTX07151655 | § | |

## JUDGMENT OF CONVICTION BY COURT—WAIVER OF JURY TRIAL

| Judge Presiding: | HON. BROCK THOMAS | Date Judgment Entered: | 4/10/2019 |
| Attorney for State: | DAVID OVERHULS | Attorney for Defendant: | VIC VIKRAM |

Offense for which Defendant Convicted:

THEFT $1500-20K >=$600 < $1500

| Charging Instrument: | Statute for Offense: |
| INDICTMENT | N/A Penal Code |

| Date of Offense: |
| 11/11/2012 |

| Degree of Offense: | Plea to Offense: | Findings on Deadly Weapon: |
| CLASS A MISDEMEANOR | GUILTY | N/A |

Terms of Plea Bargain:

200 DAYS HCJ / STATE REDUCED FROM STATE JAIL FELONY/ NCIC 230074

| Plea to 1st Enhancement Paragraph: | N/A | Plea to 2nd Enhancement/Habitual Paragraph: | N/A |
| Findings on 1st Enhancement Paragraph: | N/A | Findings on 2nd Enhancement/Habitual Paragraph: | N/A |

| Date Sentence Imposed: | 4/10/2014 | Date Sentence to Commence: | 4/10/2014 |

| Punishment and Place of Confinement: | 200 DAYS COUNTY JAIL |

### THIS SENTENCE SHALL RUN CONCURRENTLY.

☐ SENTENCE OF CONFINEMENT SUSPENDED, DEFENDANT PLACED ON COMMUNITY SUPERVISION FOR N/A .

| Fine: | Court Costs: | Restitution: | Restitution Payable to: |
| $ N/A | $ | $ N/A | ☐ VICTIM (see below)  ☐ AGENCY/AGENT (see below) |

Sex Offender Registration Requirements do not apply to the Defendant. TEX. CODE CRIM. PROC. chapter 62

The age of the victim at the time of the offense was N/A .

If Defendant is to serve sentence in TDCJ, enter incarceration periods in chronological order.

| Time Credited: | From _____ to _____ | From _____ to _____ |
| | From _____ to _____ | From _____ to _____ |
| | From _____ to _____ | From _____ to _____ |

If Defendant is to serve sentence in county jail or is given credit toward fine and costs, enter days credited below.

**102 DAYS**    NOTES: TOWARD INCARCERATION, FINE, AND COSTS

All pertinent information, names and assessments indicated above are incorporated into the language of the judgment below by reference.

This cause was called for trial in Harris County, Texas. The State appeared by her District Attorney.

Counsel / Waiver of Counsel (select one)

☒ Defendant appeared in person with Counsel.

☐ Defendant knowingly, intelligently, and voluntarily waived the right to representation by counsel in writing in open court.

Both parties announced ready for trial. Defendant waived the right of trial by jury and entered the plea indicated above. The Court then admonished Defendant as required by law. It appeared to the Court that Defendant was mentally competent to stand trial, made the plea freely and voluntarily, and was aware of the consequences of this plea. The Court received the plea and entered it of record. Having heard the evidence submitted, the Court found Defendant guilty of the offense indicated above. In the presence of Defendant, the Court pronounced sentence against Defendant.

The Court FINDS Defendant committed the above offense and ORDERS, ADJUDGES AND DECREES that Defendant is GUILTY of the above offense. The Court FINDS the Presentence Investigation, if so ordered, was done according to the applicable provisions of TEX. CODE CRIM. PROC. art. 42.12 § 9.

EXHIBIT
B



The Court ORDERS Defendant punished as indicated above. The Court ORDERS Defendant to pay all fines, court costs, and restitution as indicated above.

**Punishment Options (select one)**

☐ Confinement in State Jail or Institutional Division. The Court ORDERS the authorized agent of the State of Texas or the Sheriff of this County to take, safely convey, and deliver Defendant to the _____. The Court ORDERS Defendant to be confined for the period and in the manner indicated above. The Court ORDERS Defendant remanded to the custody of the Sheriff of this county until the Sheriff can obey the directions of this sentence. The Court ORDERS that upon release from confinement, Defendant proceed immediately to the Harris County District Clerk's office. Once there, the Court ORDERS Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☒ County Jail—Confinement / Confinement in Lieu of Payment. The Court ORDERS Defendant immediately committed to the custody of the Sheriff of Harris County, Texas on the date the sentence is to commence. Defendant shall be confined in the Harris County Jail for the period indicated above. The Court ORDERS that upon release from confinement, Defendant shall proceed immediately to the Harris County District Clerk's office. Once there, the Court ORDERS Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☐ Fine Only Payment. The punishment assessed against Defendant is for a FINE ONLY. The Court ORDERS Defendant to proceed immediately to the Office of the Harris County . Once there, the Court ORDERS Defendant to pay or make arrangements to pay all fines and court costs as ordered by the Court in this cause.

**Execution / Suspension of Sentence (select one)**

☒ The Court ORDERS Defendant's sentence EXECUTED.

☐ The Court ORDERS Defendant's sentence of confinement SUSPENDED. The Court ORDERS Defendant placed on community supervision for the adjudged period (above) so long as Defendant abides by and does not violate the terms and conditions of community supervision. The order setting forth the terms and conditions of community supervision is incorporated into this judgment by reference.

The Court ORDERS that Defendant is given credit noted above on this sentence for the time spent incarcerated.

**Furthermore, the following special findings or orders apply:**

Signed and entered on 4/10/2014

X _____

JUDGE PRESIDING BROCK THOMAS

Notice of Appeal Filed: _____

Mandate Received: _____ Type of Mandate: _____

After Mandate Received, Sentence to Begin Date is: _____

Jail Credit: _____

Def Received on _____ at _____ AM / PM

By: _____, Deputy Sheriff of Harris County

Clerk: D DAY

FIN (CAS 20.10): _____ EN/____: _____ LCBT: _____ LCBU: _____ EN/XR18: _____

Right Thumbprint

Unofficial Copy Office of Chris Daniel District Clerk

CAUSE NO. 28384

| CHARLES E. WATKINS | § | IN THE DISTRICT COURT OF |
| | § | |
| VS. | § | |
| | § | |
| DAN WHEELER WRECKER | § | |
| SERVICE INC., ENVIRO IRON | § | CHAMBERS COUNTY, TEXAS |
| AND METALS L.L.C., BILAL | § | |
| MALIK d/b/a ENVIRO | § | |
| RECYCLING, d/b/a ENVIRO | § | |
| METALS | § | 344TH JUDICIAL DISTRICT |

## ORDER

On this day, the Court considered Defendants Dan Wheeler Wrecker Service, Inc. and Greg Hembree's (collectively the "Wheeler Defendants") Motion for Leave to Designate Sammy Wood ("Wood") as a Responsible Third Party (the "Motion"). The Court, having considered the Motion, any objection, and the arguments of counsel, is of the opinion that the Motion should be GRANTED. It is therefore

ORDERED that the Wheeler Defendants are hereby granted leave to designate Wood as a Responsible Third Party.

SIGNED on _____.

_____
PRESIDING JUDGE



**APPENDIX TAB 3**

Filed
7/8/2014 3:49:49 PM
Patti L. Henry
District Clerk
Chambers County, Texas
By: _____ Deputy

CAUSE NO. 28384

| | | |
|---|---|---|
| CHARLES E. WATKINS<br>*Plaintiff*<br><br>V.<br><br>DAN WHEELER WRECKER SERVICE<br>INC., ENVIRO IRON AND METALS<br>L.L.C., BILAL MALIK d/b/a ENVIRO<br>RECYCLING, d/b/a/ ENVIRO METALS<br>*Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT<br><br>344th JUDICIAL DISTRICT<br><br>OF CHAMBERS COUNTY, TEXAS |

## PLAINTIFF CHARLES E. WATKINS
## SECOND AMENDED ORIGINAL PETITION & REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW CHARLES E. WATKINS, (hereinafter referred to as "Plaintiff"), complaining

of DAN WHEELER WRECKER SERVICE, INC., (Dan Wheeler) and ENVIRO IRON AND

METALS L.L.C., BILAL MALIK, d/b/a ENVIRO RECYCLING, d/b/a/ ENVIRO METALS

(Enviro), (hereinafter sometimes referred to collectively as "Defendants"), and for grounds

therefore would show the Court the following:

### DISCOVERY CONTROL PLAN

1.     Plaintiff intends to conduct discovery under Level 2 of Texas Rule of Civil Procedure

190.4 because this is a complex, multi-party Occupation Code, Deceptive Trade Practice,

Conversion, Theft Liability, and Fraud.

### PARTIES

2.     Plaintiff CHARLES E. WATKINS is a person doing business in Texas with his

domicile and principal place of business in Chambers County, Texas.

3.     Defendant Dan Wheeler Wrecker Service, Inc. is a for profit corporation registered to

*Plaintiffs Second Amended Original Petition*

CERTIFIED TRUE AND CORRECT COPY CERTIFICATE
THE STATE OF TEXAS
COUNTY OF CHAMBERS
The above and forgoing is a full, true and correct photographic
copy of the original on file and on record in my office.
Containing _____ pages.
Attest _____ AD
PATTI L. HENRY, District Clerk
Chambers County, Texas
By: _____ Deputy

1



do business in the State of Texas and can be served by registered agent, D. H. Wheeler at 605 West Tidwell, Houston, Texas 77091. Service is requested through the Secretary of State.

4.      Defendant ENVIRO IRON AND METALS, L.L.C., is a domestic limited liability corporation doing business as Enviro Iron and Metals L.L.C., Enviro Recycling and Enviro Metals in Liberty, Texas and can be served by registered agent **Bilal Malik**, at 203 Highway 90 Liberty, TX 77575, or its President, **Husain Dadabhoy**, at 303 Webster Street, #1247, Houston, Texas 77002.

5.      Defendant BILAL MALIK d/b/a ENVIRO RECYCLING, d/b/a/ ENVIRO METALS, with principal place of business in Liberty, Texas, can be served at his usual place of abode, 15507 Copper Branch Lane, Houston, Texas 77095.

**JURISDICTION**

6.      The causes of action set forth herein arise out of a series of transactions and events which made the basis of Plaintiff's claims in this lawsuit. Damages are unliquidated and exceed the minimal jurisdictional limits of this Court. These claims are based upon acts carried out by the Defendants principally in Harris, Chambers and Liberty Counties, Texas. Jurisdiction is therefore proper in this Court.

**VENUE**

7.      This suit involves an unauthorized removal of property and retention of said property belonging to Plaintiff by Defendants. These events occurred in Harris, Chambers, and Liberty County. Therefore, venue is proper in this County under TEX. CIV. PRAC. & REM. CODE §15.002.



## FACTS

8.  On or about October 11, 2012, Plaintiff's 1979 Peterbilt 359 and 1988 Trailmobile 45 foot flatbed trailer was stolen from a truck stop on Interstate 10 and North Main (Valero) in Baytown, Texas. This was discovered Sunday, October 12 by plaintiff's son, Charles Kevin Watkins, upon driving by the truck stop at Interstate 10 and Main Street and observing that Plaintiff's truck and trailer were missing.

9.  Plaintiff contacted Baytown Police Department who spoke to the attendants that ran the truck stop and it was observed on video camera that an 18 wheeler wrecker owned by Defendant, Dan Wheeler Wrecker Service Inc., had towed Plaintiff's truck and trailer off the premises. Baytown police were informed by the attendants at the truck stop that they did not request for this vehicle to be removed.

10.  In Defendant Dan Wheeler's answer and Motion to Transfer Venue, Exhibit B is a certified copy of the affidavit of Detective Darsee of the Baytown police department. In the affidavit it states;

*"Hembree advised, due to the call being relayed by Graham's, he assumed proof ownership had already been shown"* as well as that *"Hembree advised he had towed truck/ trailer without seeing any proof of ownership paperwork"*. It stated further in the Motion to Transfer Venue, Exhibit B, that Hembree had towed Plaintiff's truck and trailer to Enviro Metals and Iron, LLC in Liberty, Texas and that this was done without Plaintiff / owner's consent to move the truck and trailer which is the basis of this lawsuit.



11. As an admission against its interest, Defendant Dan Wheeler Wrecker Service, in its Motion for Leave to Designate Sammy Woods as a Responsible Third Party stated: Page 1 ¶ 2 under "Summary of Motion" " *This case involves a person, Sammy Wood ("Wood") who lied about his ownership of a tractor / trailer and convinced the Wheeler Defendants to tow the tractor / trailer to a scrap yard. After completing the tow, the Wheeler Defendants discovered Wood did not own the tractor / trailer at issue.* "

12. Again, it is obvious at this point that the Wheeler Defendants should have called law enforcement and/or checked as per the statute regarding the ownership of the tractor and trailer. What Sammy Wood did or didn't do has no force or effect if the Wheeler Defendants had followed the mandates set forth within Towing Statutes.

13. Plaintiff went to Enviro Metals and Iron, LLC in Liberty, Texas on or about October 13, 2012 to find his 1979 Peterbilt and 1988 Trailmobile trailer on the premises. Malik, of Enviro Metals and Iron LLC, stated to Plaintiff that the Dan Wheeler Wrecker driver was accompanied by Sammy Wood and two other people and that Sammy Wood stated the truck belonged to him.

14. Although no title was ever presented, Malik & Enviro subsequently purchased the vehicle without title from Sammy Wood and other unidentified people and paid them $2358.90 for the truck and trailer. Malik (Enviro) admitted to Charles Watkins that on the day that the truck was delivered to the scrap yard there was a problem in that Defendant Hembree was not going to release Plaintiff's truck and trailer (still on Wrecker) until he was paid his $500 for towing,

15. This is verified through Motion to Transfer Venue, Exhibit B, where it points out Sammy Wood was issued the check and had to cash the check in order to pay Defendant Hembree for the tow.

16. Defendant Enviro did issue a check to Sammy Wood in the amount of $2358.90 which

was subsequently cashed down the street. Defendant Wheeler/Hembree was then paid, and Plaintiff's truck and trailer was towed into Enviro scrap yard facility by Defendant Hembree and released from the tow truck.

17. As an additional admission against its interest contained in its Motion to Transfer Venue, Exhibit B, Defendant Hembree never checked for a title or proof of ownership of Plaintiff's truck and trailer from anyone, nor for any type of registration, ownership documents, insurance, any fact of ownership, or even a key for said truck and trailer to verify it would in fact be a consent tow, which it was not, therefore making it an unauthorized / illegal tow.

18. Nor did Defendant Hembree inform the Baytown Police Department that the vehicle had been towed as required by operating rules and procedures inside the city limits of Baytown for towing companies, not to mention that state law requires a tow truck operator to have consent of the owner of the truck or trailer in order to tow it.

19. Additionally, Defendant Hembree did not fill out a tow ticket as required by City of Baytown Ordinance or State statute.

20. Defendant Enviro purchased the Plaintiff's truck and trailer without any type of ownership papers or title to the truck and trailer in derogation of state law with the assistance of the Wheeler Defendants who brought the truck and trailer to their facility.

21. Baytown Police Department has charged the man who was issued the check for payment of Plaintiff's truck and trailer, Sammy Wood, with a class A misdemeanor, $500-1,500 theft. The initial charge was a state jail felony but was pled down with a plea bargain agreement.

22. Since this date, the plaintiff's truck and trailer have remained on Enviro's property. Malik (Enviro) has admitted to Plaintiff that a law enforcement official had told them to leave the truck parked on the premises until it was cleared for removal. Plaintiff has sold the trailer to



Defendant Enviro for its salvage value approximately $900.00, due to the amount of damage caused by the unauthorized / illegal tow.

23. What remains in dispute is the damage to the tractor and trailer. Upon viewing the same, the condition and damages are unknown, so the value is nothing but the salvage value. Defendant Enviro is operating this scrap yard without the appropriate and mandated licensing through the Texas Department of Public Safety as promulgated by the Texas Occupations Code and it did not report the unauthorized tow as required by statute.

## CAUSES OF ACTION

### TEXAS OCCUPATIONAL CODE, SECTION 2308.404, ET SEQ

24. Plaintiff incorporates by reference each of the allegations in the preceding paragraphs of this pleading as though fully set forth here.

25. Plaintiffs's 18 wheel tractor and trailer were towed as an unauthorized tow. Plaintiff is entitled to the remedies as set forth by statute which would include but not limited to the cost of towing the salvaged vehicle to a location of his choice within Chambers County.

26. Plaintiff requests that this court find, pursuant to the Declaratory Judgment Act and pursuant to the Occupations Code, a finding that the tow by Defendant Wheeler was unauthorized, that the failure to report the unauthorized truck by Defendant Enviro was in violation of the Occupations Code and the operating of the scrap yard facility without a license is a violation of the Texas Transportation Code.



## Sec. 2308.404. CIVIL LIABILITY OF TOWING COMPANY OR PARKING FACILITY OWNER FOR VIOLATION OF CHAPTER.

(a) A towing company or parking facility owner who violates this chapter is liable to the owner or operator of the vehicle that is the subject of the violation for:

(1) damages arising from the removal or storage of the vehicle; and

(2) towing or storage fees assessed in connection with the vehicle's removal or storage.

(b) A vehicle's owner or operator is not required to prove negligence of a parking facility owner or towing company to recover under Subsection (a).

(c) A towing company or parking facility owner who intentionally, knowingly, or recklessly violates this chapter is liable to the owner or operator of the vehicle that is the subject of the violation for $1,000 plus three times the amount of fees assessed in the vehicle's removal, towing, or storage.

## CLAIM FOR DECEPTIVE TRADE PRACTICES ACT

28.    Plaintiff incorporates by reference each of the allegations in the preceding paragraphs of this pleading as though fully set forth here.

29.    Plaintiff is not a consumer but has a direct tie in rule, Sec. 2308.406. VIOLATION OF CHAPTER; INJUNCTION. A violation of this chapter may be enjoined under Subchapter E, Chapter 17, Business & Commerce Code.

30.    The Defendants can be sued under the DTPA,

31.    The Defendants committed one or more of the following wrongful acts:

*Plaintiffs Second Amended Original Petition*                                        . 7



(a)     A false, misleading, or deceptive act or practice that is specifically enumerated in the "laundry list" of the Texas Business and Commerce Code section 17.46(b) and that was relied on by the Plaintiff to the Plaintiff's detriment.

(b)     any unconscionable action or course of action,

(c)     the use or employment of an act or practice in violation of the Texas multiple violations of the Occupations Code 2308 et. seq. or

(d)     a violation of one of the "tie in" consumer statutes, as authorized by the Texas Business and Commerce Code, section 17.50(h), which are classified as "false, misleading or deceptive acts or practices", and

32.     The Defendants' actions were the producing cause of the Plaintiff's damages.

## DAMAGES

33.     Plaintiff seeks damages for conversion, actual damages, civil liability and statutory violations, together with additional un-liquidated incidental damages in an amount that is within the jurisdictional limits of the court.

## RESPONDEAT SUPERIOR

34.     Plaintiff incorporates by reference each of the allegations in the preceding paragraphs of this pleading as though fully set forth here.

35.     Defendants, as employers, are vicariously liable for the tortious acts of their employees under the doctrine of Respondeat Superior. *Knutson v. Morton Foods, Inc.*, 603 S.W.2d 805, 807 (Tex. 1980); *Lewis v. Exxon Co., U.S.A.*, 786 S.W.2d 724, 732 (Tex. App. El Paso 1989). Respondeat Superior imposes liability on Defendant employers when the negligence of their employees, acting in the scope of their employment, was the proximate cause of Plaintiff's injury. *DeWitt v. Harris County*, 904 S.W.2d 650, 654 (Tex. 1995); *Marange v. Marshall*, 402



S.W.2d 236, 239 (Tex. 1966).

36.    Corporate Defendants, Dan Wheeler Wrecker Service, Inc. and Enviro Iron & Metals are responsible for the acts of their employees as set forth above.

## CONVERSION

37.    Plaintiff incorporates by reference each of the allegations in the preceding paragraphs of this pleading as though fully set forth here.

38.    Plaintiff owned or had possession of the property or entitlement to possession; Defendants unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the Plaintiff's rights as an owner; the Plaintiff demanded return of his property; and Defendants refused to return the property.  Defendants are liable to Plaintiff for damages incurred resulting from the conversion of his property.

## CIVIL CONSPIRACY

39.    Plaintiff incorporates by reference each of the allegations in the preceding paragraphs of this pleading as though fully set forth here.

40.    Defendants, who were all aware and with specific intent, intended the harm or wrongful conduct at the inception of their combination or agreement, conspired to accomplish an unlawful objective and/or achieve a lawful objective by unlawful means; Defendants had a meeting of the minds on the objective or course of action; in furtherance of the conspiracy, one or more unlawful overt acts transpired; and Plaintiff suffered damages as a proximate result of Defendants' wrongful acts. Plaintiff has suffered and continues to suffer economic and non-economic losses because of the wrongful conduct of the Defendants.

## JOINT ENTERPRISE

41.    Plaintiff incorporates by reference each of the allegations in the preceding paragraphs of



this pleading as though fully set forth here.

42. The Defendants were engaged in a joint enterprise in committing torts against Plaintiff.

43. The Defendants had an express and implied agreement; a common purpose; a community of pecuniary interest; and an equal right to a voice in the direction of the enterprise. The joint enterprise of Defendant caused damages to the Plaintiff resulting from those torts.

## CONCERT OF ACTION
## AND PARTICIPATORY AND VICARIOUS LIABILITY

44. Plaintiff incorporates by reference each of the allegations in the preceding paragraphs of this pleading as though fully set forth here.

45. The Defendants were in concert of action in committing intentional torts against Plaintiff.

46. The Defendants committed an intentional tort, the tort was a highly dangerous, deviant, or antisocial group activity likely to cause harm; the Defendants agreed (explicitly or tacitly) to cooperate in a particular plan or to accomplish a particular result; the Defendants' own conduct was tortious; the tortious conduct of the Defendants caused the Plaintiff's injury.

47. As a consequence of the foregoing, Defendants are liable for actual and economic damages that are provided by statute (see statutory references above).

48. Plaintiffs are entitled to recovery of pre-judgment and post-judgment interest as provided by law

## EXEMPLARY DAMAGES

49. Plaintiff's injury resulted from Defendants' malice, and / or conversion, which entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a) and or the DTPA.

## ATTORNEY FEES

50. Plaintiff is entitled to recover reasonable and necessary attorney fees under Texas Civil

*Plaintiffs Second Amended Original Petition*                                             10

Practice & Remedies Code. Additionally, Plaintiff is entitled to attorney fees as per Chapter 17.50 d of the Texas Business and Commerce Code. Et seq.

## CONDITIONS PRECEDENT

51.　All conditions precedent to Plaintiff's claim for relief have been performed or have occurred.

## DEMAND FOR JURY

52.　Plaintiff demands a jury trial and has tendered the appropriate fee.

## REQUEST FOR DISCLOSURE

53.　Under Texas Rule of Civil Procedure 194, Plaintiff requests that each Defendant disclose, within 50 days of the service of this request, the information or material described in Rule 194.2.

## PRAYER

54.　For these reasons, Plaintiff asks that Defendants be cited to appear and answer and that Plaintiff have judgment against defendants for the following:

 a. Actual damages.

 b. Attorney fees.

 c. Pre-judgment and post-judgment interest.

 d. Costs of suit.

 e. Consequential damages

 f. Special damages of lost profits, reliance, restitution, incidental damages.

 g. Exemplary & Statutory Damages

 h. All other relief, in law and in equity, to which plaintiff may be entitled.



Respectfully submitted,

Frederick F. Hoelke
State Bar No. 09775600
26545 I H 10 West, Suite 100
Boerne, Texas 78006
Telephone: 210-444-0999
Facsimile : 210-444-0996
fredhoelke@aol.com
Attorney for Plaintiff

*Plaintiffs Second Amended  Original Petition*

12



## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of July, 2014, the PLAINTIFF'S Second Amended Original Petition was served to the following counsel at the address and/or facsimile number or email address or hand delivery or as indicated and/or listed below:

**NICHOLAS J. LANZA**
**STEWART SCHMELLA**
4950 BISSONET
Bellaire, Texas 77401
Telephone: (713) 523-0400
Facsimile: (713) 668-6417
_nlanza@mlm-lawfirm.com_
Attorneys for
Dan Wheeler Wrecker Service, Inc.

___ Facsimile Transmission
___ First Class Mail USPS
___ Hand Delivery
_X_ Electronic Mail
___ Certified Mail RRR

Frederick F. Hoelke

13





**APPENDIX TAB 4**

Filed
7/16/2014 1:09:37 PM
Patti L. Henry
District Clerk
Chambers County, Texas
By: _____ Deputy

CAUSE NO. CV-28384

| | | |
|---|---|---|
| CHARLES E. WATKINS | § | IN THE DISTRICT COURT |
| *Plaintiff* | § | |
| | § | 344th JUDICIAL DISTRICT |
| V. | § | |
| | § | |
| DAN WHEELER WRECKER SERVICE | § | OF CHAMBERS COUNTY, TEXAS |
| INC., ENVIRO IRON AND METALS | § | |
| L.L.C., BILAL MALIK d/b/a ENVIRO | § | |
| RECYCLING, d/b/a/ ENVIRO METALS | § | |
| *Defendants* | § | |

---

PLAINTIFF CHARLES E. WATKINS
OBJECTION TO MOTION TO DESIGNATE RESPONSIBLE THIRD PARTY
OF DAN WHEELER WRECKER SERVICE, INC

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW CHARLES E. WATKINS, (hereinafter referred to as "Plaintiff"), and files this

his Objection and Response to Defendant Dan Wheeler's Motion to designate a responsible third

party and for grounds therefore would show the Court the following:

## INTRODUCTION

1.      Plaintiff is Charles E. Watkins and the defendant who is the subject of this motion is Dan

Wheeler Wrecker Service, Inc. and defendant Hembree

2.      Plaintiff CHARLES E. WATKINS sued defendant for violations of the Texas

Transportation Code, Texas Occupations Code as a "Tie In" to the Texas Business and

Commerce Code § 17.50(h), conversion, trespass to chattels, joint enterprise, aiding and

abetting, and concert of action for the theft of his 18 Wheeler truck and trailer.

3.      Defendant Wheeler filed its motion to designate responsible third party on July 3, 2014

greater than 60 days post answer.

*Plaintiffs Objection & Response to Motion to Designate Responsible Third Party of Dan Wheeler* 1
*Wrecker Service, Inc.*

CERTIFIED TRUE AND CORRECT COPY CERTIFICATE
THE STATE OF TEXAS
COUNTY OF CHAMBERS
The above and forgoing is a full, true and correct photographic
copy of the original on file and on record in my office.
Containing _____ pages.
Attest _____
AD
PATTI L. HENRY, District Clerk
Chambers County, Texas
By: _____

4.	Defendant Wheeler wrongfully contends that Sammy Wood is a responsible third party to any claims that Plaintiff has and maintains against defendant Dan Wheeler Wrecker Service, Inc. and its agent servant and/or employee Defendant Hembree

## RELIEF REQUESTED IN RESPONSE

5.	*PLAINTIFF OBJECTS AND REQUESTS THE COURT TO DENY THE DEFENDANT'S MOTION FOR DESIGNATION OF SAMMY WOODS AS A RESPONSIBLE THIRD PARTY.*

a.	*Defendant failed to plead the facts necessary and did so by misrepresenting the facts to the court;*

b.	*Defendant's own actions in not following the regulations as set forth by the City of Baytown and the State of Texas ultimately caused this loss.*

c.	*Defendant failed to state anything other than a conclusionary statement with no facts in its motion.*

## THE FACTS, THE LAW & MISREPRESENTATION TO THIS COURT

6.	Defendants significantly fail to give this court an accurate factual appraisal and misrepresent the key facts within the motion asking for the responsible third party designation.

7.	In "Section 2 Summary of Motion" of defendants Dan Wheeler and Hembree's motion, defendants state :

" *This case involves a person, Sammy Wood ("Wood"), who lied about his ownership in a tractor / trailer and convinced the Wheeler defendants to tow the tractor trailer to a scrap yard. After completing the tow the Wheeler defendants found out that Wood did not own the tractor / trailer at issue. "* Wheeler defendants further state, " *The owner of the tractor / trailer, Plaintiff Charles E. Watkins ("Watkins"), has sued the Wheeler defendants. Because Wood's*



*criminal acts caused the injuries for which Watkins now sues the Wheeler defendants"....* [1]

8.      Defendants grossly distort and speculate the reason why they were sued, which had nothing to do with Sammy Wood, but because they violated the towing statute, did so knowingly, with plenty of opportunities afforded not to. Additionally they participated in an illegal sale of an untitled and now damaged vehicle to a chop shop and then attempted to coerce, through third parties whom they do business with, for plaintiff to drop his claims or those third parties would alter evidence against Plaintiff.

9.      Defendants intentionally left out the fact that Hembree, according to the sworn affidavit of Probable Cause, stated that he, Hembree;

> a.      "Received a call from Graham's Wrecker Service in reference to a tow that they were going to pass on;
>
> b.      Hembree was given a phone number of 713-494-3190.
>
> c.      Hembree advised that he spoke with a male over the phone that went by the name of "Jim King".
>
> d.      Hembree advised that due to the tow call being relayed by Graham's, he assumed proof of ownership had already been shown.;
>
> e.      Hembree advised that he towed the truck /trailer without seeing any proof of ownership paperwork."[2]

10.      Considering the assumption by Defendants Wheeler and Hembree that the proof of ownership had been established, there was no representation by a responsible third party that did convince or had been convinced , conned or otherwise misled the defendants regarding the tow until now. A true and accurate copy of Defendants Exhibit 2 is attached as Exhibit 2 to this response.

11.      Defendants left out other crucial facts: One is that the driver's license of Sammy Wood does not have the name "Jim King" on it, and that two, other individuals were waiting with

---

[1] See Wheeler defendants Motion to designate responsible third party Pg.2 § 2 Summary ¶ 1

[2] See Exhibit B to the defendant's Dan Wheelers motion to transfer venue attached and is an admission against its interest in the instant motion. See Tex Rules of Evidence 801 (e) et seq.

*Plaintiffs Objection & Response to Motion to Designate Responsible Third Party of Dan Wheeler*      3
*Wrecker Service, Inc.*



defendant Hembree as Sammy Wood went to cash a check written from the "chop shop" to pay for the unauthorized tow.

a. The Wheeler defendants never obtained a signed executed tow ticket from anyone before towing plaintiff's tractor; and,

b. In doing so, Wheeler defendants violate Baytown City Ordinance 102-169 (a) (6) where it states, "*It shall be unlawful for a tow truck company to use a tow truck for towing services pursuant to this article without completing a tow truck ticket form*". See the Baytown City Ordinances attached as Exhibit 3.

c. The Wheeler defendants would have known the real name of the person requesting the tow if the tow truck ticket form had been filled out prior to the hook up. [3]

d. "Jim King's" identity as referenced by a true and accurate copy of Defendants Exhibit 2 as Exhibit 2 attached was the name used that defendant Hembree spoke to ante the hook up and tow.

e. If the tow truck ticket had been signed by Sammy Wood, the true identity of the requestor would have been established. Towing companies because of public policy require that tow requestors demonstrate appropriate identification and insured interest as a custom and practice in the industry.

f. After completing the tow as admitted by the Wheeler defendants they discovered that Sammy Wood did not own the tractor trailer but they sure stayed and completed the transaction including getting paid without notifying any law enforcement organization.

12. Defendant Wheeler is the same movant whose address information contrary to statute is inaccurately recorded at the Texas Secretary of State's Office and who asked and was denied its

---

[3] without the prescribed tow truck ticket form filled out this is a per se Illegal tow. See 102-169 (a)(6) attached as Exhibit 3

*Plaintiffs Objection & Response to Motion to Designate Responsible Third Party of Dan Wheeler*    4
*Wrecker Service, Inc.*

motion to transfer venue and who has registered under a fictitious name with the Texas Department of Licensing and Regulation. What credibility do these defendants have?

13.     Defendant Wheeler has and still operates wreckers that do not state the true name of the business, which is purposeful in nature so as to not fully disclose to the public who they are as required by statute and Baytown City ordinance which is where the non-consent tow originated.

## THE LEGAL BASIS FOR THE COURT'S DENIAL OF THIS MOTION

14.     Defendants have failed to plead the facts in a manner which would allow this court to give them leave to designate a responsible third party and those facts the plaintiff submits do not exist.

15.     Having a license and/or permit to tow is a privilege. See § 2308.057 of the Texas Occupations Code, Chapter 2308, Vehicle Towing and Booting, wherein a tow truck is permitted and a tow company is licensed. [4]

16.     As part of the privilege to operate a towing company and permit for towing vehicles the State of Texas and City of Baytown require that the Tow Company, in this case defendant Dan Wheeler, operate within the statutes so as to prevent unscrupulous persons from taking others' property, such as the 74-year-old plaintiff's property, to a chop shop like happened within the instant case.

17.     The Towing and Booting act does not delineate the liability for a tow truck operator who violates that statute. It instead enforces strict liability to a towing company or operator who knowingly violates the statute in any way. This is in the interest of public policy because operating a tow truck is a privilege and a license is required, therefore holding towing companies

---

[4] Dan Wheeler Wrecker Service, Inc. is licensed by the State of Texas and City of Baytown and its trucks permitted upon registration at the TDLR in the city registered and/or by the city where operated.

*Plaintiffs Objection & Response to Motion to Designate Responsible Third Party of Dan Wheeler*     5
*Wrecker Service, Inc.*



and operators to a higher standard.

18.     The Plaintiff did not consent to the tow therefore making it a non-consent tow / illegal tow and the provisions set forth by the state of Texas as well as by the City of Baytown were not followed.

19.     Specifically there is no record that defendant Dan Wheeler Wrecker Service, Inc. contacted law enforcement within two hours of realizing something was amiss.  On the contrary, defendant Hembree waited and would not release the plaintiff's truck and trailer until he was paid.

20.     Specifically, as an admission against their interest, defendant Dan Wheeler and Hembree state in their motion that, *"After completing the tow, the Wheeler Defendants discovered Wood did not own the tractor trailer at issue"*.  Wheeler could have done the right thing, inclusive of stopping the continued participation of the delivery of a non-titled vehicle to a chop shop, but it waited until it could assure itself payment before it would release plaintiff's property to the collusive hands of the chop shop.

21.     It was the acts of the Wheeler defendants that caused the damage to Plaintiff. Specifically not following the statute and getting the correct information before the tow. What is an indicia of this is, instead of carefully preparing the vehicle for a tow, they just hooked on and pulled the truck, damaging it in a substantial manner.

22.     The Wheeler defendants never obtained a signed and executed tow ticket from anyone prior to hooking on and towing plaintiff's livelihood away. This violates Baytown City Ordinance 102-169 (a) (6) where it states " *It shall be unlawful for a tow truck company to use a tow truck for towing services pursuant to this article without completing a tow truck ticket form.* "



23.    Defendants Wheeler and Hembree have never refuted the fact Charles Watkins did not give permission or consent to anyone to tow his tractor and trailer which is the basis of this suit, and have only asserted to the Baytown Police in a sworn affidavit that ownership was arguably checked by assumption with no documents. Only after the tow was completed did the Wheeler defendants discover the tractor and trailer did not belong to Sammy Wood but did nothing except collect a towing fee.

24.    The Wheeler defendants stated in open court through counsel that they caused the damage and that it happened in Harris County.

25.    Sammy Wood at no time is listed in the probable cause affidavit or by assertion by the Wheeler defendants to have operated the wrecker that towed, damaged and delivered the tractor and trailer that belonged to plaintiff to the chop shop in Liberty County .

26.    Plaintiff is a 74 year old man who lives within Chambers County.

27.    The plaintiff is not suing on a negligence cause of action as that is not required by statute. There is no proportionate responsibility embraced by the plaintiffs pleading as pled. Defendants, especially the Wheeler defendants, participated in a scheme for money to take the property of the plaintiff without satisfying even the basic requirements of the ordinances of the City of Baytown or the Texas Occupations Code.

### Prayer

For these reasons, plaintiff asks the court to sustain this objection and deny the relief requested in the defendant's motion to designate responsible third party finding that the Wheeler defendants failed to plead sufficient facts and that no leave to designate be granted and all other

relief, in law and in equity, to which plaintiff may be entitled by law.

Respectfully submitted,

Frederick F. Hoelke
State Bar No. 09775600
26545 I H 10 West, Suite 100
Boerne, Texas 78006
Telephone: 210-444-0999
Facsimile : 210-444-0996
fredhoelke@aol.com
*Attorney for Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that on the __16__ day of JULY, 2014, the PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DESIGNATE RESPONSIBLE THIRD PARTY was served to the following counsel at the address and/or facsimile number or email address or hand delivery or as indicated and or listed below:

NICHOLAS J. LANZA
*nlanza@mlm-lawfirm.com*
4950 BISSONET
Bellaire, Texas 77401
Telephone: (713) 523-0400
Facsimile: (713) 668-6417
ATTORNEY for
Dan Wheeler Wrecker Service, Inc.

____ Facsimile Transmission
____ First Class Mail USPS
____ Hand Delivery
__X__ Electronic Mail
____ Certified Mail RRR



Frederick F. Hoelke

*Plaintiffs Objection & Response to Motion to Designate Responsible Third Party of Dan Wheeler Wrecker Service, Inc.*     9



CAUSE NO. CV-28384

| CHARLES E. WATKINS | § | IN THE DISTRICT COURT |
| *Plaintiff* | § | |
| | § | 344th JUDICIAL DISTRICT |
| V. | § | |
| | § | |
| DAN WHEELER WRECKER SERVICE | § | OF CHAMBERS COUNTY, TEXAS |
| INC., ENVIRO IRON AND METALS | § | |
| L.L.C., BILAL MALIK d/b/a ENVIRO | § | |
| RECYCLING, d/b/a/ ENVIRO METALS | § | |
| *Defendants* | § | |

## AFFIDAVIT OF CHARLES KEVIN WATKINS

| STATE OF TEXAS | § |
| | § |
| COUNTY OF CHAMBERS | § |

I, Charles Kevin Watkins after being duly sworn, do hereby state that the facts stated herein are within my personal knowledge and are true and correct.

I was approached by Kameron Price, who is employed by Graham Wrecker Service. Kameron Price as well as Graham Wrecker Service has a vested interest in the success of Defendant Dan Wheeler Wrecker Service which has an agreement or contract to tow trucks to Graham Wrecker Service's Vehicle Storage Facility which allows them to have a towing permit in Baytown. Defendant Dan Wheeler Wrecker Service also is allowed to store their wreckers on land owned by Kameron Price who also sits as ex officio on the Baytown Towing Committee. Ms. Price and Mr. Robert Kelley, who are with Graham Wrecker Service on separate times and

**Exhibit 1**



places have told me to have my father drop his case and claims against Dan Wheeler Wrecker Service, Inc. or they would offer false testimony as to the value of my father's truck.

*FURTHER AFFIANT SAYETH NOT.*

_____
Charles Kevin Watkins

SUBSCRIBED AND SWORN TO BEFORE ME on the 15th day of July , 2014, to certify which witness my hand and seal of office.

_____
Notary Public State of Texas

My Commission Expires: July 13, 2017

KRISTEN V. GARCIA
MY COMMISSION EXPIRES
July 13, 2017

Printed or Stamped Name of Notary



02033/057

338   p.2

THE STATE OF TEXAS
VS.
02033057

SAMMY WOOD                    SPN:
136 WOODWARD RD               DOB: WM 04-06-86
LUFKIN, TX 75901             DATE PREPARED: 1/10/2013

D.A. LOG NUMBER:1922483
CJIS TRACKING NO.:

BY: AZ  DA NO: 002327599
AGENCY:BAYTOWN PD
O/R NO: 201244659
ARREST DATE: TO BE

NCIC CODE: 2300 75            RELATED CASES:

FELONY CHARGE: THEFT.
CAUSE NO:
HARRIS COUNTY DISTRICT COURT NO:        1373439
FIRST SETTING DATE:                     338

BAIL: $15,000
PRIOR CAUSE NO:

FILED
Chris Daniel
District Clerk
JAN 10 2013

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

Before me, the undersigned Assistant District Attorney of Harris County, Texas, this day appeared the undersigned affiant, who under oath says that he has good reason to believe and does believe that in Harris County, Texas, SAMMY WOOD hereafter styled the Defendant, heretofore on or about NOVEMBER 11, 2012, did then and there unlawfully appropriate, by acquiring and otherwise exercising control over property, namely, ONE TRACTOR-TRUCK AND ONE TRAILER owned by CHARLES WATKINS JR, hereafter styled the Complainant, of the value of over one thousand five hundred dollars, and under twenty thousand dollars, with the intent to deprive the Complainant of the property.

Probable Cause

Affiant, Detective Shane Darsee, is a Certified Peace Officer employed by the Baytown Police Department, believes and has reason to believe that Sammy Lee Wood, hereinafter styled as Defendant, committed the offense of Auto Theft on or about November 11, 2012 in 6110 I-10 Highway, Harris County, Texas. Affiant bases his beliefs on the following set of facts.

Affiant was assigned to conduct a follow up investigation on official Baytown Police Department offense report case number 2012-44659. After reviewing the report prepared by Baytown Police Officer King, unit 143, and Baytown Officer Shafer, unit 124, I learned that Charles Watkins, a credible and reliable person, reported his 1979 Peterbilt tracker-truck (TXLP# R08518) along with 1988 Trailex flatbed trailer (TXLP# X11052) stolen on November 11, 2012 from the Valero truck stop located at 6110 I-10 Highway, Harris County, Texas. The total value of the tractor-truck and trailer is $15,000.00.

The Baytown Police report also indicated that Valero had video of a tow truck with the logo of Dan Wheeler Wrecker Service on the side, which showed the towing being completed on 11/10/12 at about 1754 hours. After Officer Shafer verified the tow was not requested by the Valero Station, he notified Dan Wheeler Wrecking and learned the tow was completed by driver, Gregory Hembree, a credible and reliable person. Officer Shafer was able to speak to Hembree and learn that the truck and trailer was towed to Terrell's Auto Parts located at 201 U.S. 90, Liberty, TX. Shafer was able to contact Liberty Police Department in reference to seizing the truck and trailer.

Affiant spoke with Hembree as well over the phone and in person. Affiant learned that Hembree received a call from Graham's Wrecker Service in reference to a tow that they were going to pass on. Hembree was given a phone number of 713-494-3193. Hembree advised he spoke to a male over the phone that went by the name of "Jim King". The male gave the description of the above tractor-truck and trailer to Hembree. He was told to tow the truck/trailer to Terrell's located in Liberty. Hembree advised due to the tow call being relayed by Graham's, he assumed that the proof of owner ship was already shown. Hembree advised he towed truck/trailer without seeing any proof of ownership paperwork.

Affiant drove to Terrell's and spoke with Bilal Malik, a credible and reliable person, manager and who handled the purchase of Watkins' truck/trailer. Malik was able to produce a photo copy of a Texas Driver's License that belonged to the Defendant. Malik advised the male he dealt with in person was the same on the Texas Driver's License produced to him of the Defendant. Malik advised he wrote a check to the Defendant for $2358.90 on 11/10/12 under check number 1566 to scrap the truck/trailer.

The Defendant cashed the check at MJA Food located at 1413 Highway 90, Liberty, Texas, to pay Hembree his towing fee. The MJA clerk, Muhammad Aqeel, a credible and reliable person, wrote the Defendant's Texas Driver's License number and date of birth on the top of the check and advised the man he cashed check 1566 matched the Defendant's Texas Driver's License that was shown to him. Watkins advised he did not

**Exhibit 2**



give the Defendant permission to have his truck/trailer moved and sold. Watkins advised he doesn't know the Defendant.

Certified Document Number: 54399986 - Page 2 of 2

AGAINST THE PEACE AND DIGNITY OF THE STATE.

Sworn to and subscribed before me on January 10, 2013

_____
AFFIANT

_____
ASSISTANT DISTRICT ATTORNEY      BAR NO.
OF HARRIS COUNTY, TEXAS.

COMPLAINT



I, Chris Daniel, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office
this   March 19, 2014

Certified Document Number:      54399936 Total Pages: 2

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com



## ARTICLE III. TOW TRUCKS*

### DIVISION 1. GENERALLY

**Sec. 102-136. Definitions.**

The following words, terms and phrases, when used in this article, shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning:

*City official* is an employee of the city authorized by the city manager to initiate the towing of a vehicle.

*Consent tow* means any tow of a motor vehicle initiated by the owner or operator of the vehicle or by a person who has possession, custody, or control of the vehicle. The term does not include a tow of a motor vehicle initiated by a peace officer investigating a traffic accident or a traffic incident that involves the vehicle or a tow initiated by a city official pursuant to a court order.

*Heavy-duty rotation list* means the list of heavy-duty towing companies who have been permitted by the city and have entered into a contractual relationship with the city to perform heavy-duty nonconsent tows at the request of the city.

*Nonconsent tow* means any tow of a motor vehicle that is not a consent tow. Nonconsent tow includes a tow made from the scene of a vehicle accident or similar event after the vehicle owner fails to select a towing company or after the selected towing company fails to respond within the time frame established in subsection 102-174(a).

*Public roadway* means a public street, alley, road, right-of-way or other public way, including paved and unpaved portions of the right-of-way.

*Regular rotation list* means the list of towing companies who have been permitted by the city and have entered into a contractual relationship with the city to perform nonconsent tows at the request of the city. The regular rotation list shall be utilized for tows not requiring heavy-duty tow trucks.

*Tow truck* means a motor vehicle, including a wrecker, permitted by the state commission of licensing and regulation and equipped with a mechanical device used to tow, winch, or otherwise move another motor vehicle.

*Tow truck operator* means a person who holds an appropriate license issued by the state commission of licensing and regulation and operates a tow truck permitted by the state commission of licensing and regulation.

*Towing company* means an individual, association, corporation, or other legal entity that controls, operates, or directs the operation of one or more tow trucks over a public roadway in this state but does not include a political subdivision of the state.

*Tow truck permit* means a permit issued by the city to all towing companies that are on the heavy-duty or regular rotation lists, signifying that the tow trucks of that towing company may be dispatched to the scene of an accident.

*Tow truck ticket form* means the form used by vehicle owners for the selection of towing companies, which form is prepared and used as provided in this article.

*Vehicle* means a device in, on, or by which a person or property may be transported on a public roadway. The term includes an operable or inoperable automobile, truck, motorcycle, recreational vehicle, or trailer but does not include a device moved by human power or used exclusively on a stationary rail or track.

*Editor's note—Ord. No. 10,257, §§ 1, 2, adopted Feb. 9, 2006, repealed the former Art. III, §§ 102-136—102-200, and enacted a new Art. III as set out herein. The former Art. III pertained to similar subject matter and derived from Code 1967, §§ 6-1, 6-2, 6-10—6-13, 6-15, 6-17; Ord. No. 3249-A, § 1, adopted Nov. 12, 1981; Ord. No. 4180, §§ 1, 2, adopted June 27, 1985; Ord. No. 4294, §§ 1, 3, adopted Oct. 24, 1985; Ord. No. 4326, §§ 1, 2, adopted Nov. 26, 1985; Ord. No. 4622, §§ 1—11, 13, 21, adopted Jan. 22, 1987; Ord. No. 5769, §§ 1—4, adopted Feb. 14, 1991; Ord. No. 5852, § 1, adopted May 9, 1991; Ord. No. 7198, §§ 1—5, 8, adopted Jan. 12, 1995; Ord. No. 7703, § 1, adopted May 23, 1998; Ord. No. 9134, § 1, adopted March 22, 2001.

State law reference—Tow trucks, Vernon's Ann. Civ. St. art. 6675c.

## Exhibit 3



*Vehicle owner* means a person:

(1) Named as the purchaser or transferee in the certificate of title issued for the vehicle under V.T.C.A., Transportation Code, ch. 501;

(2) In whose name the vehicle is registered under V.T.C.A., Transportation Code, ch. 502, or a member of the person's immediate family;

(3) Who holds the vehicle through a lease agreement;

(4) Who is an unrecorded lienholder entitled to possess the vehicle under the terms of a chattel mortgage; or

(5) Who is a lienholder holding an affidavit of repossession and entitled to repossess the vehicle.

*Vehicle storage facility* means a garage, parking lot, or other facility that is:

(1) Owned by a person other than a governmental entity; and

(2) Used to store or park at least ten vehicles each year.

(Ord. No. 10,257, § 2, 2-9-06; Ord. No. 11,032, § 2, 12-11-08)

**Sec. 102-137. Penalty.**

Any person who shall violate this article shall upon conviction be punished as provided in section 1-14.

(Ord. No. 10,257, § 2, 2-9-06; Ord. No. 11,032, § 2, 12-11-08)

**Sec. 102-138. Tow truck committee; hearings**

(a) There is created a tow truck committee. The term "committee," as used in this article shall mean the tow truck committee. The committee shall be composed of:

(1) Five citizens not in the tow truck business;

(2) One citizen in the tow truck business, who shall serve as an ex officio member and shall possess no voting privileges and whose only function shall be to render advice to the regular members of the committee; and

(3) One youth ex officio member between the ages of 14 and 18, who shall possess no voting privileges and whose only function shall be to render advice to the regular members of the committee.

Three of the initial five voting committee members shall be designated by the city council to serve one-year terms. The terms of the remaining initial committee members and all subsequent terms of all voting committee members shall be for two years. The terms of the ex officio member and the youth ex officio member shall be for one year. Appointments shall be made in April of each year. A majority of the voting members of the committee shall constitute a quorum for the transaction of business.

(b) The committee shall meet at least once each calendar quarter. At each meeting, the city staff shall present a report on the operations and activities under this article. The committee shall review each towing company's activities for compliance with this article, the tow agreement, the statutes, and rules and regulations that govern tow truck operations and business. If the committee believes that one or more towing companies may not be in compliance with this article, the tow agreement, the statutes, and rules and regulations that govern tow truck operations and business, the committee shall set a hearing on the matter.

(c) If a hearing is set by the committee, the towing company shall be given notice of the hearing and of the reason therefor. The notice must state that the towing company will be required to submit at the hearing proof of compliance with all applicable provisions of this article, the tow agreement, the statutes, and rules and regulations that govern tow truck operations and business. Such notice shall be mailed on or before the tenth day before the date of the hearing before the committee.

(d) After the public hearing, the committee shall consider the evidence and arguments presented at the hearing to determine whether the towing company has violated this article, the tow




agreement, the statutes, and rules and regulations that govern tow truck operations and business. If the committee finds that the towing company violated such article, the statutes, or rules and regulations, the committee shall take appropriate action against the towing company, which may include, but is not limited to, suspension of the tow truck permit, which shall result in a suspension from the applicable rotation list for a period determined to be appropriate by the committee. The committee shall reduce its findings to writing and deliver the same to the applicable towing company.
(Ord. No. 10,257, § 2, 2-9-06; Ord. No. 11,031, § 18, 12-11-08; Ord. No. 11,032, § 2, 12-11-08; Ord. No. 11,280, § 1, 12-10-09)

### Sec. 102-139. Appeal of decision of the tow truck committee.

(a) Any towing company shall have the right to appeal any decision of the tow truck committee to the city council by making written request to the city manager. Such request must be filed with the city clerk within 15 days after such person has been notified in writing of the decision of the committee and must state in detail the reason for the appeal.

(b) No towing company shall have any right to appeal for relief to any court in regard to any matter covered by this article until after such towing company has exhausted the appeal procedure provided for in this section.

(c) Upon hearing the appeal, city council may uphold, modify or reverse the decision of the tow truck committee.
(Ord. No. 10,257, § 2, 2-9-06; Ord. No. 11,032, § 2, 12-11-08)

### Sec. 102-140. Tow fee study.

(a) A towing company may request a tow fee study if the towing company has a valid tow truck permit and had a valid tow truck permit throughout the 12-month period preceding the request. The request must be made in writing to the city clerk. The request must identify the specific fees requested to be reviewed and indicate the towing

company's willingness to provide any necessary financial documentation that the city may deem necessary to conduct the review.

(b) A nonrefundable fee of $500.00 in the form of a cashier's check payable to the city must be tendered to the city clerk at the time the tow fee study request is submitted. This fee is intended to defray the cost of the study.

(c) The tow fee study shall be performed at the direction of the city clerk. The methodology used to conduct the study will be established by the director of finance. The director of finance shall determine what financial information is necessary to conduct the study, which shall include, but not be limited to, financial information requested from permitted towing companies in the city. All towing companies with a tow truck permit shall provide all requested financial information.

(d) The findings of the tow fee study shall be presented to tow truck committee. The tow truck committee shall consider the study and shall prepare and deliver a recommendation to the city council to increase, decrease, or make no adjustment to the fees for nonconsent tows.

(e) Upon receipt of the tow truck committee's recommendation, the city council shall consider the tow fee study and recommendation and may amend the applicable tow agreement.

(f) The city shall not be required to conduct a tow rate study if a rate study has been performed within the preceding 24-month period.

(g) Nothing in this section shall preclude the city from undertaking a tow fee study at its own discretion at any time.
(Ord. No. 12,275, § 1, 6-13-13)

Secs. 102-141—102-165. Reserved.

## DIVISION 2. CONSENT AND NONCONSENT TOWS

### Sec. 102-166. Rotation lists.

(a) Regular rotation list.

(1) For a towing company to be eligible to be placed on the regular rotation list, the towing company shall be permitted by the

city to engage in nonconsent tows and shall enter into a contract in the form and substance approved by the city attorney for nonconsent tows.

(2) The regular rotation list shall be used to select the towing company to respond to a regular nonconsent tow authorized by the city. For each regular nonconsent tow, the towing company will be called on a rotating basis so that after a towing company has been called for a regular nonconsent tow, the towing company shall be moved to the bottom of the list and shall not be called again until all other towing companies then on the regular rotation list have been called for a regular nonconsent tow.

(3) A towing company shall not pass a call for a regular nonconsent tow. A towing company may request in writing to be temporarily removed from the regular rotation list. To be effective, the public safety communications division of the city must receive such request prior to the public safety communications division dispatching the tow truck company to the scene of an accident or similar event from the rotation list.

(b) Heavy-duty rotation list.

(1) For a towing company to be eligible to be placed on the heavy-duty rotation list, the towing company shall be permitted by the city to engage in heavy-duty nonconsent tows and shall enter into a contract in the form and substance approved by the city attorney for heavy-duty nonconsent tows.

(2) The heavy-duty rotation list shall be used to select the towing company to respond to a heavy-duty nonconsent tow authorized by the city. For each heavy-duty nonconsent tow, the towing company will be called on a rotating basis in a rotation manner so that after a towing company has been called for a heavy-duty nonconsent tow, the towing company shall be moved to the bottom of the list and shall not be called again until all other

towing companies then on the heavy-duty rotation list have been called for a heavy-duty nonconsent tow.

(3) A towing company shall not pass a call for a heavy-duty nonconsent tow. A towing company may request in writing to be temporarily removed from the heavy-duty rotation list. To be effective, the public safety communications division of the city must receive such request prior to the public safety communications division dispatching the tow truck company to the scene of an accident or similar event from the rotation list.

(c) Regardless of the procedure established by this article, certified law enforcement officials shall control the scene of an accident in the manner they deem appropriate.
(Ord. No. 10,257, § 2, 2-9-06; Ord. No. 11,032, § 2, 12-11-08)

## Sec. 102-167. Vehicle storage facilities.

(a) A towing company performing a nonconsent tow who tows a vehicle to a vehicle storage facility shall tow the vehicle to a state-licensed vehicle storage facility within the corporate limits of the city unless directed otherwise by the vehicle owner a or city official.

(b) All yards and storage areas used to store vehicles towed pursuant to this article shall be fenced and maintained in accordance with all applicable state laws and chapter 18, article XII of this Code.
(Ord. No. 10,257, § 2, 2-9-06; Ord. No. 11,032, § 2, 12-11-08)

## Sec. 102-168. Solicitation of business prohibited.

It shall be an offense of a person to stop, park, halt or operate a tow truck within 500 feet of the scene of a consent or nonconsent tow unless the towing company is dispatched to the scene by a city official.
(Ord. No. 10,257, § 2, 2-9-06; Ord. No. 11,032, § 2, 12-11-08)

**Sec. 102-169. Tow truck ticket form.**

(a) *Use.*

(1) When a peace officer determines that a consent or nonconsent tow is required for any vehicle, such peace officer shall inquire of the vehicle owner, if available, as to the location where the vehicle owner desires to have the vehicle towed.

(2) If the vehicle owner designates a towing company to perform towing services, the peace officer shall communicate the fact to the public safety communications division, who shall call the designated towing company to dispatch a tow truck to the appropriate location.

(3) A peace officer shall communicate with the public safety communications division, who shall summon a towing company from the appropriate rotation list to provide towing services if:

a. The vehicle owner does not designate a towing company to perform towing services; or

b. The towing company selected by the vehicle owner fails to arrive at the scene within the time period specified in subsection 102-174(a).

A city official shall communicate with the public safety communications division, who shall summon a towing company from the appropriate rotation list to provide towing services if an abandoned or junked vehicle as defined in section 34-91 of this Code is seized by a city official pursuant to a court order.

(4) Upon the arrival of the tow truck from the towing company requested pursuant to subsection (2) above at the location, the tow truck operator shall request the vehicle owner to complete a tow truck ticket form designating the towing company that the vehicle owner desires to remove such vehicle. The vehicle owner shall sign the tow truck ticket form. The tow truck operator shall give a copy of the form to the vehicle owner and shall retain the original thereof.



(5) If the owner of the vehicle is unable or unwilling to sign the tow truck ticket, or if the peace officer has requested a nonconsent tow, the tow truck operator shall complete a tow ticket form and note any refusal or inability to sign for consent tows. The tow truck operator shall give a copy of the completed form to the city official at the scene and shall retain the original.

(6) It shall be unlawful for a tow truck company to use a tow truck for towing services pursuant to this article without completing a tow truck ticket form.

(b) *Content.* The chief of police shall cause a tow truck ticket form to be prepared which shall contain:

(1) The name, address, and permit number of the towing company issued by the state department of licensing and regulation;

(2) The name and license number issued by the state department of licensing and regulation of the tow truck operator;

(3) The name and address of the driver of the towed vehicle;

(4) The make, model, and vehicle identification number of the vehicle being towed;

(5) The date, time and location of tow;

(6) Total amount charged for towing;

(7) Location to where vehicle is towed;

(8) Storage rate per day;

(9) Description of all personal property within the disabled automobile at the time of its removal;

(10) A statement by the vehicle owner either:

a. Designating in blank spaces therein both:

1. The towing company that the vehicle owner desires to employ to remove the vehicle, and

2. The place to which the vehicle owner desires such vehicle to be removed; or

b. Declaring that the vehicle owner has no preference as to which towing company to employ and designating in blank spaces therein the place to which the vehicle owner desires such vehicle to be removed;

(11) Police department case number, if applicable; and

(12) A space for the signature of the vehicle owner or city official requesting the nonconsent tow, whichever is applicable.

(Ord. No. 10,257, § 2, 2-9-06; Ord. No. 11,032, § 2, 12-11-08)

**Sec. 102-170. Influence by city officials as to selection of tow truck prohibited.**

No city official shall, directly or indirectly, either by word, gesture, sign or otherwise, recommend to any person the name of any particular person engaged in the tow truck service or repair business; nor shall any such city official influence or attempt to influence in any manner the decision of any person in choosing or selecting tow truck or repair service.

(Ord. No. 10,257, § 2, 2-9-06; Ord. No. 11,032, § 2, 12-11-08)

**Sec. 102-171. Impoundment of vehicles.**

A city official may direct that any vehicle towed, whether consent or nonconsent, be taken by the tow truck operator towing the vehicle directly to the city pound or other place of storage designated by the city, and there be held by the city for inspection or investigation.

(Ord. No. 10,257, § 2, 2-9-06; Ord. No. 11,032, § 2, 12-11-08)

**Sec. 102-172. Towing company records.**

(a) *Maintenance of records.* Each towing company on either of the city's rotation lists shall maintain at its garage or storage location, records as to all vehicles towed in accordance with the provisions of this article. The records required to be kept by the each towing company on either of the city's rotation lists shall include the towing information form as described in subsection 102-169(b). The towing company shall preserve the

records for 12 months from the date the towed vehicle is released from the possession of the towing company.

(b) *Records available to city.* The records required to be maintained in accordance with the provisions of this section shall be made available to city officials by the towing company between the hours of 8:00 a.m. and 5:00 p.m. Monday through Friday, except on nationally recognized holidays.
(Ord. No. 10,257, § 2, 2-9-06; Ord. No. 11,032, § 2, 12-11-08)

### Sec. 102-173. Lien for towage and storage fees.

(a) When a vehicle has been towed and placed in storage, the towing company who performed the tow shall be required to notify the last-known registered owner and all lien holders of record of the vehicle that the vehicle has been towed and stored. Such notice must conform to the notice requirements of state law.

(b) The vehicle storage facility that provides notice of the possession of the vehicle to the owner in accordance with the provisions of state law must also provide to the police chief a copy of the certified, return receipt requested, letter of notice sent to the owner and a copy of the certification paper received by the vehicle storage facility from the post office after delivery of the certified notice.
(Ord. No. 10,257, § 2, 2-9-06; Ord. No. 11,032, § 2, 12-11-08)

### Sec. 102-174. Duty of tow truck operator.

(a) A towing company who has been called from a rotation list to tow a vehicle shall arrive at the location within 30 minutes after the time the towing company or its representative was notified by the public safety communications division of the tow and location. This 30-minute requirement is applicable in all instances except when the towing company, during the initial telephone call from the public safety communications division requesting a nonconsent tow, utilizes or is deemed to utilize one of its two passes as defined and permitted in section 102-200. Failure to comply with this subsection shall constitute a run-time violation.

(b) It shall be the duty of the towing company responding to a consent or nonconsent tow to clean up and remove the debris as directed by the city official.
(Ord. No. 10,257, § 2, 2-9-06; Ord. No. 11,032, § 2, 12-11-08; Ord. No. 11,991, § 1, 7-26-12)

Secs. 102-175—102-195. Reserved.

## DIVISION 3. PERMIT

### Sec. 102-196. Application.

(a) Any tow truck company that desires to be placed on the heavy-duty or regular rotation list, as provided in division 2 of this article, shall apply to the city clerk for a tow truck permit.

(b) A towing company must submit the following information on its tow truck permit application:

(1) The name and address of the owner and the name and address of the towing company;

(2) A copy of the incident management towing permit issued by the state commission of licensing and regulation for each tow truck to be operated by the towing company for nonconsent tows;

(3) The amount of parking available, i.e., space to keep cars and tow trucks off the street;

(4) The make, model and type of vehicle(s) to be operated by the towing company for nonconsent tows;

(5) Whether the vehicle(s) shall be operated by the owner or his employee with a bona fide employer-employee relationship, together with a copy of the owner's or employee's incident management towing operator's license issued by the state commission of licensing and regulation;

(6) Whether the applicant proposes to own, rent or lease the vehicle(s) to be used;

(7) Proof that the applicant has a storage facility within the corporate city limits of the city, which is licensed by state law



suitable for the protection of stored vehicles and fenced as required by city ordinance;

(8) Proof of insurance coverage as required in the tow agreement and state law;

(9) Proof that the vehicle(s) have undergone and passed an inspection performed by the chief of police within the two-month period immediately preceding the application for proper equipment required to be on each tow truck as stated in this division and in the tow agreement;

(10) Proof that the storage lot to be used by the applicant is currently licensed as an automobile storage lot under the applicable statutes and regulations, including a copy of the vehicle storage facility license issued by the state commission of licensing and regulation;

(11) A copy of the cab card issued by the state commission of licensing and regulation for each tow truck to be operated by the towing company; and

(12) A completed tow agreement executed by the towing company.
(Ord. No. 10,257, § 2, 2-9-06; Ord. No. 11,032, § 2, 12-11-08)

**Sec. 102-197. Fees.**

(a) *Application fee.* The annual tow truck permit application fee of $15.00 shall be submitted with the application. There shall be no proration of fees.

(b) *Inspection fee.* For each tow truck operating under a single tow truck permit, an additional fee of $50.00 shall be charged for inspection of each tow truck for proper equipment. There shall be no proration of fees.

(c) *Fees due.* All application and inspection fees shall be remitted at the time of submission of the permit application.
(Ord. No. 10,257, § 2, 2-9-06; Ord. No. 11,032, § 2, 12-11-08)

**Sec. 102-198. Issuance.**

(a) Subject to subsections (c) and (d) hereof, all tow truck permits shall be issued by the city clerk upon the submission of a completed application, an executed tow agreement and the successful inspection of the tow truck by the chief of police.

(b) A copy of the applicable rotation list shall be issued to all towing companies on such list.

(c) Tow truck permits shall expire on September 30 of each year. Following approval by annual inspection and the payment of the annual tow truck permit fee, the approved towing company shall be placed on the applicable rotation list for that year. If the tow truck is inspected after June 30 and successfully passes the same, such tow truck shall not be subject to the inspection requirement of this article for the issuance of a permit for the following year.

(d) If a tow truck permit has been suspended during the permit year, issuance of a new permit will be reviewed by the tow truck committee during September of such year. The awarding of such permit shall be denied if the committee determines that the health, general public safety and welfare of the citizens of the city demand such a result.
(Ord. No. 10,257, § 2, 2-9-06; Ord. No. 11,032, § 2, 12-11-08; Ord. No. 11,350, § 1, 5-13-10)

**Sec. 102-199. Transferability.**

A towing company's tow truck permit shall be personal to the permittee and shall not be transferable.
(Ord. No. 10,257, § 2, 2-9-06; Ord. No. 11,032, § 2, 12-11-08)

**Sec. 102-200. Suspension.**

(a) The tow truck committee may revoke or suspend in accordance with section 102-138 for up to one year a towing company's tow truck permit for any of the following reasons:

(1) Violation of any of the laws of the state, federal or city government; commission of an offense as defined by this article; or violation of any of the terms of this article or the city tow agreement by a towing company, its agents or employees.

(2) Failure of a towing company to meet the requirements as set forth in its application for a tow truck permit.

(3) Failure to abide by any of the terms of the tow agreement.

(4) Towing of a vehicle to an automobile storage lot not licensed by the state as an automobile storage lot, unless the tow truck operator was directed by the owner or operator of the towed vehicle to tow the vehicle to such unlicensed location.

(b) As used in this article, a "pass" shall be defined as when the public safety communications division telephones a towing company on the rotation list to perform a nonconsent tow and is unable to contact the towing company or the towing company refuses or declines to accept the telephone call or the towing company refuses to accept the tow. The towing company shall be entitled to two passes during a calendar month. In the event the towing company passes three or more times during a calendar month, the towing company shall be subject to suspension from the rotation list for a period deemed appropriate by the tow truck committee.
(Ord. No. 10,257, § 2, 2-9-06; Ord. No. 11,032, § 2, 12-11-08; Ord. No. 11,991, § 2, 7-26-12)





**APPENDIX TAB 5**

Filed
8/6/2014 11:53:02 AM
Patti L. Henry
District Clerk
Chambers County, Texas
By_____ Deputy

CAUSE NO. 28384

| | | |
|---|---|---|
| CHARLES E. WATKINS | § | IN THE DISTRICT COURT OF |
| | § | |
| VS. | § | |
| | § | |
| DAN WHEELER WRECKER | § | |
| SERVICE INC., ENVIRO IRON | § | CHAMBERS COUNTY, TEXAS |
| AND METALS L.L.C., BILAL | § | |
| MALIK d/b/a ENVIRO | § | |
| RECYCLING, d/b/a ENVIRO | § | |
| METALS | § | 344TH JUDICIAL DISTRICT |

## DEFENDANTS DAN WHEELER WRECKER, INC. AND GREG HEMBREE'S REPLY TO PLAINTIFF CHARLES E. WATKINS' OBJECTION TO MOTION FOR LEAVE TO DESIGNATE SAMMY WOOD AS A RESPONSIBLE THIRD PARTY

Defendants Dan Wheeler Wrecker Service, Inc. ("Dan Wheeler") and Greg Hembree ("Hembree") (collectively the "Wheeler Defendants") file its Reply to Plaintiff Charles E. Watkins' Motion for Leave to Designate Sammy Wood ("Wood") as a Responsible Third Party.

1. **Summary of Reply.**

The Court should grant the Wheeler Defendants leave to designate Sammy Wood ("Wood") as a Responsible Third Party. The Wheeler Defendants have provided fair notice of why the jury should be permitted to consider Wood's liability as a Responsible Third Party. In the event the Court determines the Wheeler Defendants did not plead sufficient facts concerning the responsibility of Wood, the Court must permit the Wheeler Defendants to replead before denying the Motion for Leave to Designate Responsible Third Parties.

CERTIFIED TRUE AND CORRECT COPY CERTIFICATE
THE STATE OF TEXAS
COUNTY OF CHAMBERS
The above and forgoing is a full, true and correct photographic copy of the original on file and on record in my office.
Containing_____ pages.
Attest_____ AD
PATTI L. HENRY, District Clerk
Chambers County, Texas
By:_____
Deputy

**2.     The Responsible Third Party Statute Applies to Watkins' Remaining Claims.**

The responsible third party statute applies to Watkins' remaining claims. A responsible third party is "any person who is alleged to have caused or contributed to causing in any way the harm for which the recovery of damages is sought," whether by negligence or other conduct which falls below a legal standard. TEX. CIV. PRAC. & REM. CODE § 33.011(6) (emphasis added). The responsible third party framework applies to any cause of action based in tort for which defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought. TEX. CIV. PRAC. & REM. CODE § 33.002(a)(1). Watkins has apparently abandoned his claims for negligence, fraud, and a violation of the Texas Theft Liability Act.[1] Nonetheless, Watkins continues to allege various tort claims, including conversion, trespass to chattels, and a violation of the Texas Deceptive Trade Practices Act ("DTPA"). Trespass and conversion are both torts under Texas law. *See Zapata v. Ford Motor Credit Co.*, 615 S.W.2d 198, 201 (Tex. 1981). Chapter 33 expressly applies to claims brought under the DTPA. TEX. CIV. PRAC. & REM. CODE § 33.002(a)(2). Thus, the responsible third party statute applies to Watkins' remaining claims.

**3.     The Wheeler Defendants Provided Fair Notice.**

The Wheeler Defendants have satisfied the fair notice requirements of explaining why the Court should grant leave to designate Wood as responsible third parties. Under the Texas responsible third party statute, the Court must grant a timely motion for leave to designate a responsible third party unless another party timely objects and shows that "the defendant

---

[1] Watkins elides over the fact that he had pleaded those causes of action when the Wheeler Defendants filed their Motion for Leave. The Wheeler Defendants filed the Motion for Leave on July 3, 2014. Watkins amended his pleadings to withdraw his claims for fraud, negligence, and violation of the Texas Theft Liability Act on July 8, 2013.

2



did not plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirement of the Texas Rules of Civil Procedure." TEX. CIV. PRAC. & REM. CODE § 33.004(g). Under Texas Rule of Civil Procedure 47, a pleading must contain "a short statement of the cause of action sufficient to give fair notice of the claim." Tex. R. Civ. P. 47(a). The standard for fair notice is whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000).

The Wheeler Defendants pleaded sufficient facts to provide fair notice of why Wood is responsible for the injuries allegedly suffered by the Plaintiffs. Watkins contends that on November 10, 2011, the Wheeler Defendants improperly towed a vehicle belonging to Watkins to a scrap metal facility in Liberty, Texas. Watkins contends the Wheeler Defendants "did not check for a title from the unknown person who purported to own [Watkins'] truck and trailer, nor for any type of registration, ownership papers, insurance, or any fact of ownership, or even a key for said truck or trailer." Watkins' Second Am. Pet., at ¶ 10. As Watkins acknowledges, "Baytown and or Liberty police departments have charged the man who was issued the check for payment of [Watkins'] truck and trailer for the theft of the truck and trailer." *Id.* at ¶ 11. Wood is the unknown person who was charged for theft in connection with the events complained of by Watkins. Harris County charged Wood for his part in deceiving Dan Wheeler into towing the vehicle at issue. Wood subsequently pleaded guilty to theft.

The Wheeler Defendants have pleaded sufficient information such that Watkins can ascertain from the Motion for Leave the nature and basic issues of the controversy and what

3

testimony will be relevant. *See Auld*, 34 S.W.3d at 896. The responsible third party statute does not require any more than that. TEX. CIV. PRAC. & REM. CODE § 33.004(g). Consequently, the Court must grant the Wheeler Defendants' Motion for Leave.

**4.      The Court Cannot Consider Watkins' Liability Arguments or Evidence Offered to Support the Objection.**

Watkins spends the bulk of his Objection arguing why the Wheeler Defendants are solely at fault. Watkins' arguments—which the Wheeler Defendants reject—are inapposite to the Wheeler Defendants' Motion for Leave. A trial court is restricted to evaluating the sufficiency of the facts pleaded by the moving party in determining whether to grant a motion for leave to designate a responsible third party. *In re Unitec Elevator Servs. Co.*, 178 S.W.3d 53, 62 (Tex. App.—Houston [1st Dist.] 2005, orig. proceeding). A court is not permitted to engage in an analysis of the truth of the allegations or consider evidence on the third party's ultimate liability. *Id.* Thus, Watkins various arguments regarding liability and particularly his baseless character attacks upon the Wheeler Defendants are of no consequence to the Motion for Leave.

A jury—not Watkins or the Wheeler Defendants—will ultimately decide who is at fault for the damages alleged by Watkins. Under the responsible third party statute, the Wheeler Defendants are entitled to submit the conduct of Wood to the jury. The Court must grant the Wheeler Defendants' Motion for Leave.

**5.      Prayer.**

The Wheeler Defendants respectfully request that the Court award the following relief:

- grant the Wheeler Defendants leave to designate Wood as a Responsible Third Party; and

4



- award such other and further relief to which the Wheeler Defendants may be justly entitled.

Respectfully submitted,

MCCORMICK, LANZA & MCNEEL, L.L.P.

NICHOLAS J. LANZA
TBA No. 11941225
STEWART K. SCHMELLA
TBA No. 24033041
4950 Bissonnet
Bellaire, Texas 77401
713-523-0400
713-668-6417 fax
nlanza@mlm-lawfirm.com
sschmella@mlm-lawfirm.com

ATTORNEYS FOR DEFENDANT DAN
WHEELER WRECKER SERVICE, INC.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document was sent as described below on August 6, 2014.

*Via Email: fredhoelke@aol.com*
Frederick F. Hoelke
26545 I H 10 West, Suite 100
Boerne, Texas 78006

NICHOLAS J. LANZA/
STEWART K. SCHMELLA

5



**APPENDIX TAB 6**

REPORTER'S RECORD

VOLUME 1 OF 1

TRIAL COURT CAUSE NO. CV28384

CHARLES E. WATKINS             *     IN THE DISTRICT COURT

                               *

VS.                            *     CHAMBERS COUNTY, TEXAS

                               *

DAN WHEELER WRECKER            *

SERVICE, INC., ENVIRO          *

IRON AND METALS, L.L.C.,       *

BILAL MALIK D/B/A ENVIRO       *

RECYCLING, D/B/A ENVIRO        *

METALS                         *     344TH JUDICIAL DISTRICT

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

 **MOTION FOR LEAVE TO DESIGNATE RESPONSIBLE THIRD PARTY**

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

On the 29th day of August, 2014, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Randy McDonald, Judge Presiding, held in Anahuac, Chambers County, Texas:

Proceedings reported by Machine Shorthand.

**A P P E A R A N C E S**

**FOR THE PLAINTIFF**:

Frederick F. Hoelke

SBOT NO. 09775600

LAW OFFICES OF FREDERICK F. HOELKE

26545 IH 10 West, Suite 100

Boerne, Texas 78006

**FOR THE DEFENDANTS**:

Stewart K. Schmella

SBOT NO. 24033041

McCORMICK, LANZA & McNEEL, L.L.P.

4950 Bissonnet

Bellaire, Texas 77401

**<u>VOLUME 1</u>**

**<u>MOTION FOR LEAVE TO DESIGNATE RESPONSIBLE THIRD PARTY</u>**

                                                        <u>PAGE</u>

Case Called                                                4

Defendant's Arguments                                      4

Plaintiff's Arguments                                     12

Court's Ruling                                            20

Reporter's Certificate                                    33

THE COURT: Charles Watkins v. Dan Wheeler Wrecker Service.

MR. SCHMELLA: Good morning.

THE COURT: Motion for Leave to Designate Third Party. Is it opposed?

MR. HOELKE: Yes, sir.

THE COURT: We'll get back to that.

(PAUSE IN PROCEEDINGS)

THE COURT: Charles Watkins v. Dan Wheeler.

Okay. Gentlemen, if I recall this case, we've been here twice on venue. We've decided venue -- or at least the Court has decided venue.

MR. SCHMELLA: That's right, Judge.

THE COURT: And now we are here on a Motion to Leave to Designate a Responsible Third Party.

I think that that's your Motion.

MR. SCHMELLA: Yes, it is, Judge.

THE COURT: And you're trying to, I take it, add a -- what you consider to be a more responsible third party?

MR. SCHMELLA: We're -- we're asking the Court to grant leave to designate a responsible third party. We're not trying to join the person.

THE COURT: Oh, you're not trying to join

them?

MR. SCHMELLA: No. We're -- we're moving under Chapter 33 of the Civil Practices --

THE COURT: Okay.

MR. SCHMELLA: -- and Remedies Code, but I just wanted to make sure that -- actually, what we're trying to do -- we're not trying to add the party as a third-party defendant or anything like that and --

THE COURT: So, what is the purpose, then?

MR. SCHMELLA: Your Honor, the purpose is that under Chapter 33 of the Civil Practices and Remedies Code, the jury is entitled to consider whether a responsible third party is a cause or contributor to the harm alleged by the plaintiffs with respect to any tort action; and in this particular case -- and by the way, for the record, I'm Stewart Schmella for --

THE COURT: Yeah.

MR. SCHMELLA: -- defendants Dan Wheeler Wrecker Service and Gregory Hembree.

THE COURT: Thank you very much.

And that's Fred Hoelke for --

MR. HOELKE: Frederick Hoelke for Charles Watkins, plaintiff.

THE COURT: This is Cause No. 28384.

MR. SCHMELLA: And, Your Honor, under

Chapter 33, the legislature has made it plain that it applies to all tort causes of action and all -- and, furthermore, claims brought under the DTPA. And Mr. Watkins has asserted -- he apparently narrowed some of his claims based on his most recent petition. But he's still asserting a conversion claim, trespass to chattels claim, both of which are tort claims, and a DTPA violation. And Chapter 33 expressly provides for the responsible third-party statute framework for DTPA actions.

And really, Judge, the only question that -- that's relevant today is whether the defendants have provided -- have pleaded sufficient facts to support the designation of Sammy Wood as a responsible third party.

THE COURT: And who is Sammy Wood?

MR. SCHMELLA: Sammy Wood, Judge, is the gentleman who was convicted of theft in Harris County in connection with the incident. He's a person who deceived everyone involved; and, again, he's pleaded guilty to theft as a result of this incident.

And under Chapter 33, Your Honor, I submit that, you know, there are sufficient facts that the defendants have alleged to indicate that Mr. Wood is at least, in part, responsible for the harm alleged by the

plaintiffs. And all that's relevant at this stage, Your Honor, is whether we provided fair notice of why we believe Mr. Wood is culpable.

Mr. Hoelke, in his response, tried to argue the merits of it. And under *In re: Unitec Elevator* -- it's 178 S.W. 3d 53 -- the Court can't engage in a merits review that Mr. Hoelke would essentially ask for at this time. The analysis is solely limited to the sufficiency of the facts alleged.

And, furthermore, Your Honor, I'd like to for one minute take a -- just a brief moment to address what I think Mr. Hoelke will talk about in a minute. Mr. Watkins filed a -- what he titled a "Further Response" alleging that somehow my clients don't have standing, I think, to raise this -- raise this matter before the Court. And, frankly, Your Honor, I'm mystified as to why that might be.

Mr. Hoelke, you know, indicated that Dan Wheeler somehow violated the Business and Commerce Code and, therefore, we could not bring any claim for affirmative relief. And as an initial matter, that wouldn't apply to Mr. Hembree, who is also a defendant in the case. You know, he's a natural person.

And I guess without knowing what section of the Business and Commerce Code Dan Wheeler allegedly

violated, I -- I can't possibly try to anticipate what section of the Business and Commerce Code that Dan Wheeler allegedly violated and, furthermore, apparently can no longer defend the suit. That's essentially what the plaintiffs are asking. And, so -- and, again, I was mystified when I read it earlier this week.

THE COURT: Well, that -- I want to talk about the practical aspect of it. What you're trying to do is allow to get issues before a jury -- and if I -- if I misstate this, correct me, please. Okay? But you're trying to get issues before the jury indicating that somebody else is responsible for this issue and, yet, because they're not a party, they're not here to defend their actions; in other words, they're not necessarily here to say, "Well, yeah, I did all those things you say I did; but by the way, your guy" -- I guess in this case -- "your client is the one that hired me to do it."

MR. SCHMELLA: Your Honor, I -- I would say that that is something of a fair summation. Now, I would also add two things: One, the legislature has provided for this, that -- that, you know, this isn't -- this isn't a brand-new scheme. The legislature has had --

THE COURT: Oh, I know.

MR. SCHMELLA: -- a responsible third-party statute now for ten years, and they've expressly allowed us to go forward in this manner.

Furthermore, Mr. Watkins can sue Mr. Wood. There's no bar from -- from -- as far as I'm aware -- preventing Mr. Watkins from suing Mr. Wood as a party. And, so, to the extent that they're possibly concerned about an empty chair type of defense without being able to, you know, have any remedy against Mr. Wood, they can go after him.

THE COURT: Well, I'm -- I'm not actually thinking about what they're saying. I'm thinking about what I'm going to be doing and how I'm going to be presenting this because, obviously, the desire for this Court is for each of you to get a fair trial and a fair hearing in this matter; and, generally speaking, trials where there are not witnesses -- and I doubt if -- is he not in prison?

MR. SCHMELLA: Your Honor, I believe as of a few months ago, he was in the Angelina County Jail. I intend to at least take his deposition. I don't know whether he's currently incarcerated; but, again, in terms of our presentation for a jury, I know I've done this before where, you know, in your jury charge for negligence, conversion, et cetera, it would be -- you

know, we're pleading comparative negligence. So, you know, you add Mr. Watkins. We have, you know, the defendants; and then we have a separate blank for Sammy Wood.

THE COURT: Well, would we all agree that this Sammy Wood is a witness or a potential witness?

MR. SCHMELLA: Yes.

THE COURT: And he has -- he has disposed of his matters in Harris County involving this particular case?

MR. SCHMELLA: Well, I'm not sure what you mean by "disposed," Your Honor. I can tell you he has --

THE COURT: Plead guilty.

MR. SCHMELLA: -- been convicted.

THE COURT: Yes.

MR. SCHMELLA: He has pleaded guilty, yes, and been sentenced.

THE COURT: Okay. So, he's not going to be able to assert a Fifth Amendment right as to this area. He can assert it, but it's probably not going to be upheld by the Court in a civil matter.

So, I guess my question is this: Instead of guessing what part he might play in there, you think maybe it would be better to take his deposition now and

then let me look at that, add that to your Motion, and see if it would be a worthwhile thing to do?

MR. SCHMELLA: With all due respect, Your Honor, no, I don't think so. I think that the statute -- all that requires from us now is whether we've sufficiently alleged that Mr. Wood was involved and the cause of the damages sought. What you're talking about is essentially a merits review in determining whether we have sufficient evidence, and the scheme doesn't provide for that.

Now, at a later date, if Mr. Watkins wants to challenge whether we have sufficient evidence to go forward with designating Mr. Wood and presenting a case to the jury, he can do that; but, first, we need a leave to designate Mr. Wood as a responsible third party. I think taking the deposition -- and, furthermore, again, I -- with respect to a deposition, he's already been convicted of the crime arising out of this incident; and, so, I don't see what a deposition --

THE COURT: Well, what I --

MR. SCHMELLA: -- would necessarily change.

THE COURT: And I agree with almost everything you just said. I mean, I really do. The question is, though, if I don't -- if I grant this and

then no one takes his deposition, that's what I'm concerned about. There will actually never be a merit review so that I can make the decision of whether I was right in -- you're right to what you say. You can designate -- it's the cart-before-the-horse-type-deal.

MR. SCHMELLA: Right.

THE COURT: I'm looking at the jury trial.

MR. SCHMELLA: Well, at least I --

THE COURT: And that's a merit -- that's a merit issue. I agree with you.

MR. SCHMELLA: Well, and if I may, I think the way to solve that is to -- first, I intend to take his deposition, you know.

THE COURT: But I --

MR. SCHMELLA: But I -- you know, having said that, if -- hypothetically, if the deposition doesn't go forward, then potentially Mr. Watkins has a remedy, moving to strike the designation; and at that time you can consider whether I've come forward with sufficient evidence. And I think that's where the deposition would fit in, not at this stage.

THE COURT: Well, see, I was trying to solve it before I have to make that decision.

Mr. Hoelke?

MR. HOELKE: I -- I, of course, have a lot

to say about this matter, if it please the Court.

THE COURT: Well, I -- I want to address the specific issue that we were just talking about because that's fundamental on my mind right now.

MR. HOELKE: Well, there's some more fundamental --

THE COURT: Well, I understand but --

MR. HOELKE: Okay.

THE COURT: -- I can -- I can sort through those.

I want to sort through this one because he's saying -- and I agree -- it's not something to be considered on the merits itself; but, frankly, I'm thinking ahead to the jury trial and the charges and the issues that go to them. And, so, I'm thinking I would feel more comfortable if I had that deposition so I could do it.

He's saying basically, well, if I take the deposition and it doesn't reach the merits, you can strike the designation at that point in time. Now, I'm concerned about that and the timing of all this.

MR. HOELKE: And I'm also concerned, Your Honor, with that. With all due respect to my esteemed adversary here and his client, they've misrepresented themselves to everybody -- this Court, to

the Texas Department of Licensing, to the City of Baytown, to the Secretary of State.

THE COURT: Well, what does that have to do with this issue?

MR. HOELKE: Well, first and foremost, their answer, they can't ask for affirmative relief in any manner. We just came upon this right -- that's why I filed this "further" thing -- because they were operating -- they filed with the Texas Department of Licensing a name that they were to operate under that specific license as Wheeler Dan Wrecker Service, Inc. Well, Wheeler Dan Wrecker Service, Inc., doesn't exist, never has existed, and was a ploy on behalf of the defendant to keep from being held accountable.

Secondly, under sworn oath, he has given us that the corporate offices are located at 608 and 606 West Donovan. The Secretary of State has their office at 605 West Tidwell, which is a metal fence in an alley.

THE COURT: Now, see, we're going over stuff that I already know --

MR. HOELKE: Well --

THE COURT: -- that we went over before.

MR. HOELKE: -- but the point is --

THE COURT: But what does that have to do with the designation?

MR. HOELKE: Well, what -- well, what -- first and foremost, he's supposed to make this designation within 60 days of filing his answer. He missed it by four days. So, he can't bring it.

Secondly, he -- I would -- I would love to take this guy's deposition, and I think it would be prudent on the Court to defer a decision on this matter until this man's deposition is taken. And at that time I could put together the issues that have raised their head in the recent name change that the defendant has effected with the Texas Department of Licensing regulation and then subsequently filed with the City of Baytown.

What, in fact, has transpired, a complaint was filed regarding this incident at the City of Baytown. They found that it was a nonconsent tow. If you have a nonconsent tow, under the 2308.404, you have a -- you are mandated to take that to a vehicle storage facility and notify law enforcement within two hours; and none of this was done.

And this guy, when he says it's a responsible third party, this wrecker driver wouldn't unhook this truck until he got paid, knowing full well that this Mr. King that purportedly hired him was not Mr. Sammy Wood, who was this alleged person with the

felonious intent to take this truck. So, I mean, it's really an issue --

THE COURT: So, your argument basically is Wood is really not even relevant to this issue?

MR. HOELKE: He's not relevant to this issue. These guys right here have the statutory scheme that they violated. They did so intentionally. And there's a case on this with regard to the Uniform Commercial Code where somebody tried to put this whole scheme of trying to avoid the liability, and it's obfuscating the issues to the finder of fact. And the Supreme Court said, "No, we're not going to do that. You're not going to emasculate the statute as a matter of public policy by placing this third party a responsible third party."

Their pleadings and our pleadings -- the only thing that we have is unknown persons. We have two unknown persons as per the sworn affidavit, the probable cause affidavit that was issued in this matter in the prosecution of Mr. Wood. And there's no question about this, that these folks, that Mr. Hembree and the Wheeler Dan Wrecker Service, which is not even a licensed entity at the time, waited until they could get paid before they would unhook this truck.

What is not even at issue is that an

unlicensed entity not registered in the State of Texas pulled this vehicle and took it to a chop shop. I mean, that -- what is going on here, Your Honor, in common sense, one, is Mr. Wood is not relevant; two, if you bring him in, it's going to make something very complex. People are going to be pulling at heartstrings. This is not what the statutory scheme looked at and embraced.

It is very clear in the TDLR and the Occupations Code who is liable, and they have -- it is not a position where you can place -- it states on its face negligence has nothing to do with your liability under this statutory scheme. You either obey the rules or don't play. They chose intentionally to make a quick dollar.

And I think it goes a little bit deeper than that. I don't know -- and I haven't -- it hasn't passed the smell test because my client gets approached at an eating-and-drinking establishment in Baytown and has been told to tell his father to drop his case by an unrelated third party but a third party where Dan Wheeler stores their vehicles.

So, you know, I think what you're looking at here is a not-so-subtle attempt to eviscerate the statute that was put in place to protect the public and as a matter of public policy, this Court should deny

this summarily, but if it chooses not to take it under consideration, I would ask that we have that time to take the deposition of the -- Mr. -- what's his name?

MR. SCHMELLA: Wood.

MR. HOELKE: -- Wood, Sammy Wood.

MR. SCHMELLA: I apologize for not standing, Your Honor.

MR. HOELKE: Sammy Wood.

So, yes, that's what I would like, Your Honor. That's our position.

MR. SCHMELLA: Brief response, Your Honor?

THE COURT: Yes. Well, answer this question. Talk about the relevancy. Okay? Based on what he just said -- and, you know, I can see how he's carving here; but tell me why you think it's relevant at this time.

MR. SCHMELLA: Sure. I think that with respect to -- the issue is whether, you know, my client -- and they're now saying "intentionally" -- essentially improperly towed the vehicle and all that sort of stuff. The facts, I think, that will come out -- again, we're not at the merit stage. I'm just talking about pleadings. But based on what I believe the facts will show is that Mr. Wood lied to Mr. Hembree regarding his ownership interest in the vehicle; and

based on Mr. Wood's lies, Mr. Hembree towed the tractor and the trailer.

And, again, the statutory scheme, Your Honor, is very broad in terms of it caused or contributed to the harm in any way. And whether -- you know, whether it's 10 percent, 50 percent, whatever, that's a province for the jury.

And, furthermore, I just want to -- again, Mr. Hoelke has thrown up a lot of mud against the wall trying to see what's going to stick; but the fundamental inquiry at this stage is whether we have pleaded sufficient facts to provide fair notice of why Mr. Wood should be designated. Even if Your Honor respectfully disagrees with me and doesn't grant me leave today, Your Honor has to, under statute, grant me a leave to replead. You can't merely deny it, I don't believe, under Chapter 33.

And, so, again, we provided fair notice. It's a fair notice bar similar to Rule 47. It's a very low bar, quite honestly. We've provided Mr. Watkins and Mr. Hoelke sufficient information of the basic facts that we're trying to develop vis-à-vis Mr. Wood; and for that reason, I believe the Court doesn't have much of a choice but to grant us leave to designate Mr. Wood as a responsible third party.

MR. HOELKE:  May I, Your Honor?

THE COURT:  Well, I don't think you have to.  I think I've got a grip of what's going on.

MR. HOELKE:  Okay.

THE COURT:  I'm not going to grant the leave at this time.  I'm not going to deny it at this time either.  I think there needs to be some -- for me -- and I know what you were saying, that I'm looking at the merits; but I truly am looking at the merits on this issue, relevancy.  Okay?  And, so, that's where I'm looking at the merits about whatever the testimony might or might not be.

But I exactly -- I think I understand exactly what you're trying to put before this jury and perhaps put a high-enough percentage on Mr. Wood's conduct to escape any liability to Mr. Watkins.  I don't really know what all the facts are.  I understand what Mr. Hoelke is alleging.  I don't know if he'll be able to prove any of that or not.

So, when we get to these issues and you're arguing these things, I'm trying to not waste y'all's money and time by -- if I designate it, then you would surely have to take his deposition; but then if you chose not to, that might be a very good trial strategy because he is someone not under any control of anybody

because he's not a party to the issue. He is also, obviously, a convicted criminal and probably knows how to manipulate the system somewhat with regard to his activities if they are consistent with theft throughout his -- and I don't know what his conduct is.

So, it's real easy to point a finger at the empty chair, as you say, and say, "Look, this is a guy responsible for everything; and he's not here. And you know what? We can't get you anything here because he refuses to talk to us, okay, for whatever reason."

So, I'm not -- I'm not convinced that you don't get to do that, on the one hand, purely by the way you're arguing it in the statute; but on the other hand, I think in trying to, which is my job, guide this trial in a way that justice is ultimately achieved for all parties, I'm not going to grant it at this time.

Now, my recommendation is -- because I think that Mr. Watkins could, through Mr. Hoelke, try this lawsuit; and if what he is arguing is true, the name Wood would only come up as the person that had possession for a short while. And then we look at the other violations that he's alleging.

MR. HOELKE: And we --

THE COURT: So -- well, hold on.

MR. HOELKE: Yes, Your Honor.

THE COURT: So, with that, I think you understand what I'm saying.

MR. SCHMELLA: Well, but I -- I want a -- I want a specific clarification for the record, Your Honor.

THE COURT: Okay.

MR. SCHMELLA: You're refusing to grant my Motion to Designate Sammy Wood as a Responsible Third Party at this time; correct?

THE COURT: At this time.

MR. SCHMELLA: Okay. And I'm trying to figure out what do I need to do to have you grant it? I realize it's kind of asking you for an advisory opinion, but are you --

THE COURT: Well --

MR. SCHMELLA: -- requiring a deposition and other evidence to support it?

THE COURT: I -- I'm not requiring anything. It's y'all lawsuit.

MR. SCHMELLA: Well, in order to grant my designation, Judge.

THE COURT: But I am -- I am saying that I would reconsider if I had evidence of the relevancy of Mr. Wood.

MR. SCHMELLA: Okay. So, you're refusing

to grant it until you have evidence which you believe establishes relevance?

THE COURT: Which it flies right in the face of your statement that I'm not to consider the merits.

MR. SCHMELLA: Well, and --

THE COURT: But I --

MR. SCHMELLA: -- and as long as you know that, Judge.

THE COURT: I will --

MR. SCHMELLA: I just want to make sure we're clear.

THE COURT: I will tell you that I am considering the merits because to designate a third party, I don't -- I don't see how you could do that without considering whether that's relevant. I mean, anybody could pull up an empty chair and say they're the culprit and then the jury just -- one, I think it's a confusing issue to the jury unless we designate exactly who they are and they have some say in the proceedings.

MR. SCHMELLA: Well, and, Judge, I respectfully disagree with you.

THE COURT: I understand.

MR. SCHMELLA: And I would just say that, Your Honor, I used to do occupational health,

asbestos/silicosis-type work. And I'll tell you, the responsible third-party statute -- you know, it's one thing whether it's a -- well, the legislature has made the policy choice. For example, employees of a particular, let's say, sandblasting outfit and that sort of thing, obviously through the Workers' Comp bar, you know, you couldn't name the employer on the charge 15 years ago, right, as a responsible party. The statute allows it now. And I think it's analogous, and I --

THE COURT: Well, I don't know if you can designate a criminal who has been proven to intentionally do something. I don't know if you can designate them as the third party in a situation. I mean, what if we're dealing with a pawn shop? What if we're dealing with that? There are duties that the pawn shop has. There are duties that your client must have, at least according to Mr. Hoelke.

And, again, you've got to understand all I know is a vehicle was towed and apparently chopped up. That's all I know about the facts.

MR. HOELKE: Well, one thing we know, Your Honor --

THE COURT: Well, hold on, Mr. Hoelke.

MR. HOELKE: Okay.

THE COURT: I can't decide any of those

issues, but I'm trying to piece together why the criminal who has been convicted of an intentional and knowing crime, because it's not reckless theft or negligent theft -- it's going to be intentional and knowing theft -- how that person could in any way take away the culpability for the pawn dealer, so to speak, of taking the gun and melting it down, or the gold bar or the jewelry. So, that's how I'm analyzing it in my mind. So, what does that have to do with the wrecker service?

MR. SCHMELLA: Well --

THE COURT: What remains to be seen, though, and what is dangerous to both of you, as I see it, is if you take his deposition and he says, "I was hired by your guy" or "I was hired by his guy" or, you know, whatever. See? At that point in time, not only would he be designated -- he should be joined into the lawsuit at some point in time or y'all need to regroup and figure out what this lawsuit is about.

MR. SCHMELLA: Fair enough. And I don't think that's going to be an issue, candidly.

And, Your Honor, again, I -- with respect to the issue you're talking about, I'd refer you to the -- I forget the -- the *Duenez* case, D-U-E-N-E-Z. You know, that's one where -- it's a dram shop case, and

they're talking about the culpability of the dram shop. The Supreme Court has made it crystal clear that in a dram shop case, you can designate the drunk driver who is allegedly over-served as a responsible third party, period. And, so --

THE COURT: Well, I can -- I can --

MR. SCHMELLA: -- what you're talking about, I mean, again, the legislature has made the policy choice.

THE COURT: Well --

MR. SCHMELLA: But I -- I've said my piece. I don't need to argue with you.

THE COURT: Well, I'm not arguing with you. It's a discussion that we're having.

Dram shop is not involving an intentional crime. It's involving an intoxication. It's an unintentional crime. It's a little bit different. So, I can separate that in my mind. I cannot imagine that theft is not intentional.

MR. SCHMELLA: Well -- and no. Theft is an intentional act. I guess in a lot of ways, though, doesn't an intentional crime by the alleged third party show a greater culpability on his or her part?

THE COURT: Yeah. That's --

MR. SCHMELLA: To me, that screams more of

an opportunity to designate the person.

THE COURT: And that's exactly why I'm not granting it right now, because you can make it look like they're 100 percent responsible. They're not here. He's not able to deal with it. And, so, I don't think that would get justice.

Now, if we hear from them and we know what kind of range we're talking about -- but, I mean, I -- you know, I'd love to sit over there in your seat and point to that chair and say, "He stole it. We don't know nothing about it. He lied to us. We chopped it up." That's not what they're actually alleging.

MR. SCHMELLA: Legislature --

THE COURT: I think --

MR. SCHMELLA: -- allows us to do that, Judge.

THE COURT: I think that would be confusing.

Well, they may; but the legislature is not sitting up here.

MR. HOELKE: And, Your Honor, I might point out that their own evidence, which is the probable cause affidavit, Paragraph Nos. 1, 2, 3, 4, where there's no -- there's no mention in there that they were deceived. It solely states he was -- (Reading):

Hembree advised due to the tow call being relayed by Graham. He assumed that the proof of ownership was already shown. Hembree advised he towed the truck-trailer without seeing any proof of ownership paperwork.

I mean, direct violation of the statute that controls this action.

THE COURT: Well, that's -- that's whatever your lawsuit is going to be. I haven't dwelled --

MR. HOELKE: Yeah. And --

THE COURT: -- if that's the word -- I haven't gone into the lawsuit to the degree -- I'm just sitting here saying that at this time, I don't feel comfortable with regard to the relevancy. It could be 100-percent relevant, and it could not be relevant at all based on that argument.

MR. HOELKE: Yeah.

THE COURT: But it might be -- he might be part of an organized crime gang that does this and deceives every wrecker yard in the entire -- you know, then we -- then it becomes much more relevant to me and, perhaps, needs to be designated. So, I'm not denying; but I'm not granting at this time.

If you want to raise the issue a little

later, I will go back and look at the law again and consider all of your arguments and --

MR. SCHMELLA: And I --

THE COURT: I've changed my mind before.

MR. SCHMELLA: And I apologize, Your Honor. I didn't mean to cut you off. I just want to make one statement clear for the record. Mr. Hoelke indicated that we didn't file the Motion for Leave to Designate a Responsible Third Party until after -- he claims that our deadline was within 60 days of answering the lawsuit. That's if the defendant -- the alleged third party, rather -- is an unknown criminal John Doe.

Because Mr. Wood is very much known, the 60-day after lawsuit deadline doesn't apply. The minimum is 60 days before the trial setting. We've clearly met that. We have no trial setting.

THE COURT: Well, I was about to say, we don't have a trial setting yet, do we?

MR. HOELKE: But we'd sure like one.

THE COURT: You'd sure like one?

MR. HOELKE: Yes, sir.

MR. SCHMELLA: As would the defendant.

THE COURT: Well, we'll get a trial schedule together.

MR. SCHMELLA: Should we talk with your

coordinator, Judge?

THE COURT: Well, that would be nice; but I think you'll find her in Florida.

MR. SCHMELLA: Good for her.

THE COURT: Yeah. Why don't y'all -- I mean, obviously, this is fairly contentious; and there's some legal issues going on here. I want to get y'all in the best position presenting the true facts to the jury so they can make a decision. I think that's kind of my job, without trying your lawsuit. I don't want to try it either. But let's -- why don't y'all work on a schedule; and let's see if we can get this going because that may make it more meaningful to consider this, frankly, if I know there's a trial looming.

MR. SCHMELLA: And Mr. Hoelke and I talked before the hearing. We both agree that we want it set. And I think we may have a little bit of a difference in terms of when that might be in terms of whether it's the end of the year or the beginning part of next year. But, no, we -- I think all parties --

THE COURT: I actually don't think we can get you this year.

MR. HOELKE: Okay. Well, we -- that's better because he's getting ready to have an introduction of a couple of family members into his

family.

MR. SCHMELLA:  My wife's expecting twins, Your Honor.

THE COURT:  Oh, well, congratulations.

MR. HOELKE:  He's going to be pretty busy for the rest of the fall.

THE COURT:  You ought to get familiar with this third-party thing, then.

MR. SCHMELLA:  Chapter and verse, Your Honor.

THE COURT:  It's a great thing.

MR. SCHMELLA:  Thank you.

And just one further question:  With respect to getting a trial schedule, you mentioned your coordinator is away on vacation.  When -- does Your Honor know when she's going to be back?

THE COURT:  She better be back Tuesday.

MR. SCHMELLA:  Okay.  Fair enough. Well, Mr. Hoelke and I will work together with her --

MR. HOELKE:  We'll call her.

MR. SCHMELLA:  -- and we'll work on a date.

THE COURT:  Well, y'all work on something and you submit it and then I'll oversee it with her, obviously.  But, you know, give yourself plenty of time

for the experts. Give yourself plenty of time for me to figure out whether I want to designate Mr. Wood -- Woods -- whatever his name is -- as a third party, but I'm just not comfortable with doing it right now based on these things. I'm going to have to look at the pleadings a little bit more, and I'm going to have to look at -- and I will consider your arguments. That's why I'm not denying it at this time.

We can go off the record.

(PROCEEDINGS CONCLUDED)

## <u>REPORTER'S CERTIFICATE</u>

THE STATE OF TEXAS)
COUNTY OF CHAMBERS)

        I, TERI DAIGLE, Official Certified Shorthand Reporter in and for the State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

        I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

        I further certify that the total cost for the preparation of this Reporter's Record is <u>$ 181.50</u> and was paid by <u>McCormick, Lanza & McNeel, L.L.P.</u>

        WITNESS MY OFFICIAL HAND this the <u>8th</u> day of <u>October</u>, 2014.


                              /s/ Teri Daigle

                              TERI DAIGLE, CSR, RPR, CRR
                              Texas CSR #4441
                              Expiration Date:  12/31/15
                              Official Court Reporter
                              344th District Court
                              Chambers County, Texas
                              Anahuac, Texas 77514

**APPENDIX TAB 7**

## CAUSE NO. 28384

| | | |
|---|---|---|
| CHARLES E. WATKINS | § | IN THE DISTRICT COURT OF |
| VS. | § | |
| | § | |
| DAN WHEELER WRECKER | § | |
| SERVICE INC., ENVIRO IRON | § | |
| AND METALS L.L.C., BILAL | § | CHAMBERS COUNTY, TEXAS |
| MALIK d/b/a ENVIRO | § | |
| RECYCLING, d/b/a ENVIRO | § | |
| METALS | § | |
| | § | 344TH JUDICIAL DISTRICT |

## AGREED DOCKET CONTROL ORDER

The following deadlines shall apply to this case unless modified by the Court:

November 10, 2014    Deadline for parties seeking affirmative relief to designate experts. The designation must include the information listed in Rule 194.2(f) this does not apply to any expert witness on attorney fees.

December 10, 2014    Deadline for all other parties to designate experts. The designation must include the information listed in Rule 194.2(f).

January 9, 2015    Discovery period ends. All discovery must be conducted before the end of the discovery period. Counsel may conduct discovery beyond this deadline by agreement. Incomplete discovery will not delay the trial.

January 26, 2015    Docket Call. *9:00 a.m.*

February 9, 2015    Trial. *9:00 a.m.*

The parties may alter any deadlines noted herein (except trial and docket call) by written agreement. All other deadlines will be governed by the Texas Rules of Civil Procedure.

SIGNED on *October 21, 2014.*

CERTIFIED TRUE AND CORRECT COPY CERTIFICATE
THE STATE OF TEXAS
COUNTY OF CHAMBERS
The above and forgoing is a full, true and correct photographic copy of the original on file and on record in my office.

Containing _____ pages.
Attest _____ AD
PATTI L. HENRY, District Clerk
Chambers County, Texas

By: _____ Deputy

_____

PRESIDING JUDGE

AGREED AS TO FORM AND
ENTRY REQUESTED:

MCCORMICK, LANZA & MCNEEL, L.L.P.

NICHOLAS J. LANZA
TBA No. 11941225
STEWART K. SCHMELLA
TBA No. 24033041
4950 Bissonnet
Bellaire, Texas 77401
713-523-0400
713-668-6417 fax
nlanza@mlm-lawfirm.com
sschmella@mlm-lawfirm.com

ATTORNEYS FOR DEFENDANTS
DAN WHEELER WRECKER SERVICE,
INC. AND GREGORY HEMBREE

FREDERICK F. HOELKE

FREDERICK F. HOELKE
TBA No. 1190977560041225
26545 I H 10 West, Suite 100
Boerne, Texas 78006
210-444-0999
210-444-0996 fax
fredhoelke@aol.com

FILED

2014 OCT 22 AM 8: 56

_____ HENRY
DISTRICT CLERK CHAMBERS COUNTY, TEXAS

BY _____ DEPUTY

ATTORNEY FOR PLAINTIFF CHARLES E. WATKINS

**APPENDIX TAB 8**

CIVIL PRACTICE AND REMEDIES CODE

TITLE 2. TRIAL, JUDGMENT, AND APPEAL

SUBTITLE C. JUDGMENTS

CHAPTER 33. PROPORTIONATE RESPONSIBILITY

SUBCHAPTER A. PROPORTIONATE RESPONSIBILITY

Sec. 33.001.  PROPORTIONATE RESPONSIBILITY.  In an action to which this chapter applies, a claimant may not recover damages if his percentage of responsibility is greater than 50 percent.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.  Amended by Acts 1987, 70th Leg., 1st C.S., ch. 2, Sec. 2.04, eff. Sept. 2, 1987; Acts 1995, 74th Leg., ch. 136, Sec. 1, eff. Sept. 1, 1995.


Sec. 33.002.  APPLICABILITY.  (a)  This chapter applies to:
        (1)  any cause of action based on tort in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought;  or
        (2)  any action brought under the Deceptive Trade Practices-Consumer Protection Act (Subchapter E, Chapter 17, Business & Commerce Code)  in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought.
        (b)  Repealed by Acts 2003, 78th Leg., ch. 204, Sec. 4.10(1).
        (c)  This chapter does not apply to:
        (1)  an action to collect workers' compensation benefits under the workers' compensation laws of this state (Subtitle A, Title 5, Labor Code)  or actions against an employer for exemplary damages arising out of the death of an employee;
        (2)  a claim for exemplary damages included in an action to which this chapter otherwise applies;  or
        (3)  a cause of action for damages arising from the manufacture of methamphetamine as described by Chapter 99.
        (d)  to (h) Repealed by Acts 2003, 78th Leg., ch. 204, Sec.

4.10(1).

Added by Acts 1987, 70th Leg., 1st C.S., ch. 2, Sec. 2.05, eff. Sept. 2, 1987.  Amended by Acts 1989, 71st Leg., ch. 380, Sec. 4, eff. Sept. 1, 1989;  Acts 1995, 74th Leg., ch. 136, Sec. 1, eff. Sept. 1, 1995; Acts 1995, 74th Leg., ch. 414, Sec. 17, eff. Sept. 1, 1995;  Acts 2001, 77th Leg., ch. 643, Sec. 2, eff. Sept. 1, 2001;  Acts 2003, 78th Leg., ch. 204, Sec. 4.01, 4.10(1), eff. Sept. 1, 2003.


     Sec. 33.003.  DETERMINATION OF PERCENTAGE OF RESPONSIBILITY.  (a) The trier of fact, as to each cause of action asserted, shall determine the percentage of responsibility, stated in whole numbers, for the following persons with respect to each person's causing or contributing to cause in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these:
          (1)  each claimant;
          (2)  each defendant;
          (3)  each settling person;  and
          (4)  each responsible third party who has been designated under Section 33.004.
     (b)  This section does not allow a submission to the jury of a question regarding conduct by any person without sufficient evidence to support the submission.

Added by Acts 1987, 70th Leg., 1st C.S., ch. 2, Sec. 2.06, eff. Sept. 2, 1987.  Amended by Acts 1995, 74th Leg., ch. 136, Sec. 1, eff. Sept. 1, 1995;  Acts 2003, 78th Leg., ch. 204, Sec. 4.02, eff. Sept. 1, 2003.


     Sec. 33.004.  DESIGNATION OF RESPONSIBLE THIRD PARTY.  (a)  A defendant may seek to designate a person as a responsible third party by filing a motion for leave to designate that person as a responsible third party. The motion must be filed on or before the 60th day before the trial date unless the court finds good cause to allow the motion to be filed at a later date.

**APPENDIX TAB 9**

4.10(1).

Added by Acts 1987, 70th Leg., 1st C.S., ch. 2, Sec. 2.05, eff. Sept.
2, 1987.  Amended by Acts 1989, 71st Leg., ch. 380, Sec. 4, eff. Sept.
1, 1989;  Acts 1995, 74th Leg., ch. 136, Sec. 1, eff. Sept. 1, 1995;
Acts 1995, 74th Leg., ch. 414, Sec. 17, eff. Sept. 1, 1995;  Acts
2001, 77th Leg., ch. 643, Sec. 2, eff. Sept. 1, 2001;  Acts 2003, 78th
Leg., ch. 204, Sec. 4.01, 4.10(1), eff. Sept. 1, 2003.


     Sec. 33.003.  DETERMINATION OF PERCENTAGE OF RESPONSIBILITY.  (a)
The trier of fact, as to each cause of action asserted, shall
determine the percentage of responsibility, stated in whole numbers,
for the following persons with respect to each person's causing or
contributing to cause in any way the harm for which recovery of
damages is sought, whether by negligent act or omission, by any
defective or unreasonably dangerous product, by other conduct or
activity that violates an applicable legal standard, or by any
combination of these:
          (1)  each claimant;
          (2)  each defendant;
          (3)  each settling person;  and
          (4)  each responsible third party who has been designated
under Section 33.004.
     (b)  This section does not allow a submission to the jury of a
question regarding conduct by any person without sufficient evidence
to support the submission.

Added by Acts 1987, 70th Leg., 1st C.S., ch. 2, Sec. 2.06, eff. Sept.
2, 1987.  Amended by Acts 1995, 74th Leg., ch. 136, Sec. 1, eff. Sept.
1, 1995;  Acts 2003, 78th Leg., ch. 204, Sec. 4.02, eff. Sept. 1,
2003.


     Sec. 33.004.  DESIGNATION OF RESPONSIBLE THIRD PARTY.  (a)  A
defendant may seek to designate a person as a responsible third party
by filing a motion for leave to designate that person as a responsible
third party. The motion must be filed on or before the 60th day before
the trial date unless the court finds good cause to allow the motion
to be filed at a later date.

(b)   Nothing in this section affects the third-party practice as previously recognized in the rules and statutes of this state with regard to the assertion by a defendant of rights to contribution or indemnity.   Nothing in this section affects the filing of cross-claims or counterclaims.

(c) Repealed by Acts 2003, 78th Leg., ch. 204, Sec. 4.10(2).

(d)   A defendant may not designate a person as a responsible third party with respect to a claimant's cause of action after the applicable limitations period on the cause of action has expired with respect to the responsible third party if the defendant has failed to comply with its obligations, if any, to timely disclose that the person may be designated as a responsible third party under the Texas Rules of Civil Procedure.

(e)   Repealed by Acts 2011, 82nd Leg., R.S., Ch. 203, Sec. 5.02, eff. September 1, 2011.

(f)   A court shall grant leave to designate the named person as a responsible third party unless another party files an objection to the motion for leave on or before the 15th day after the date the motion is served.

(g)   If an objection to the motion for leave is timely filed, the court shall grant leave to designate the person as a responsible third party unless the objecting party establishes:

        (1)   the defendant did not plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirement of the Texas Rules of Civil Procedure;   and

        (2)   after having been granted leave to replead, the defendant failed to plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirements of the Texas Rules of Civil Procedure.

(h)   By granting a motion for leave to designate a person as a responsible third party, the person named in the motion is designated as a responsible third party for purposes of this chapter without further action by the court or any party.

(i)   The filing or granting of a motion for leave to designate a person as a responsible third party or a finding of fault against the person:

        (1)   does not by itself impose liability on the person;   and

        (2)   may not be used in any other proceeding, on the basis of

res judicata, collateral estoppel, or any other legal theory, to impose liability on the person.

(j)  Notwithstanding any other provision of this section, if, not later than 60 days after the filing of the defendant's original answer, the defendant alleges in an answer filed with the court that an unknown person committed a criminal act that was a cause of the loss or injury that is the subject of the lawsuit, the court shall grant a motion for leave to designate the unknown person as a responsible third party if:

(1)  the court determines that the defendant has pleaded facts sufficient for the court to determine that there is a reasonable probability that the act of the unknown person was criminal;

(2)  the defendant has stated in the answer all identifying characteristics of the unknown person, known at the time of the answer;  and

(3)  the allegation satisfies the pleading requirements of the Texas Rules of Civil Procedure.

(k)  An unknown person designated as a responsible third party under Subsection (j) is denominated as "Jane Doe" or "John Doe" until the person's identity is known.

(l)  After adequate time for discovery, a party may move to strike the designation of a responsible third party on the ground that there is no evidence that the designated person is responsible for any portion of the claimant's alleged injury or damage.  The court shall grant the motion to strike unless a defendant produces sufficient evidence to raise a genuine issue of fact regarding the designated person's responsibility for the claimant's injury or damage.

Added by Acts 1995, 74th Leg., ch. 136, Sec. 1, eff. Sept. 1, 1995.
Amended by Acts 2003, 78th Leg., ch. 204, Sec. 4.03, 4.04, 4.10(2), eff. Sept. 1, 2003.
Amended by:
    Acts 2011, 82nd Leg., R.S., Ch. 203 (H.B. 274), Sec. 5.01, eff. September 1, 2011.
    Acts 2011, 82nd Leg., R.S., Ch. 203 (H.B. 274), Sec. 5.02, eff. September 1, 2011.


SUBCHAPTER B.  CONTRIBUTION

**APPENDIX TAB 10**

Sec. 33.011. DEFINITIONS. In this chapter:

(1) "Claimant" means a person seeking recovery of damages, including a plaintiff, counterclaimant, cross-claimant, or third-party plaintiff. In an action in which a party seeks recovery of damages for injury to another person, damage to the property of another person, death of another person, or other harm to another person, "claimant" includes:

(A) the person who was injured, was harmed, or died or whose property was damaged; and

(B) any person who is seeking, has sought, or could seek recovery of damages for the injury, harm, or death of that person or for the damage to the property of that person.

(2) "Defendant" includes any person from whom, at the time of the submission of the case to the trier of fact, a claimant seeks recovery of damages.

(3) "Liable defendant" means a defendant against whom a judgment can be entered for at least a portion of the damages awarded to the claimant.

(4) "Percentage of responsibility" means that percentage, stated in whole numbers, attributed by the trier of fact to each claimant, each defendant, each settling person, or each responsible third party with respect to causing or contributing to cause in any way, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity violative of the applicable legal standard, or by any combination of the foregoing, the personal injury, property damage, death, or other harm for which recovery of damages is sought.

(5) "Settling person" means a person who has, at any time, paid or promised to pay money or anything of monetary value to a claimant in consideration of potential liability with respect to the personal injury, property damage, death, or other harm for which recovery of damages is sought.

(6) "Responsible third party" means any person who is alleged to have caused or contributed to causing in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by

any combination of these.  The term "responsible third party" does not include a seller eligible for indemnity under Section 82.002.

     (7)  Repealed by Acts 2003, 78th Leg., ch. 204, Sec. 4.10(3).

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.  Amended by Acts 1987, 70th Leg., 1st C.S., ch. 2, Sec. 2.07, eff. Sept. 2, 1987; Acts 1995, 74th Leg., ch. 136, Sec. 1, eff. Sept. 1, 1995;  Acts 2003, 78th Leg., ch. 204, Sec. 4.05, 4.10(3), eff. Sept. 1, 2003.

    Sec. 33.012.  AMOUNT OF RECOVERY.  (a)  If the claimant is not barred from recovery under Section 33.001, the court shall reduce the amount of damages to be recovered by the claimant with respect to a cause of action by a percentage equal to the claimant's percentage of responsibility.

    (b)  If the claimant has settled with one or more persons, the court shall further reduce the amount of damages to be recovered by the claimant with respect to a cause of action by the sum of the dollar amounts of all settlements.

    (c)  Notwithstanding Subsection (b), if the claimant in a health care liability claim filed under Chapter 74 has settled with one or more persons, the court shall further reduce the amount of damages to be recovered by the claimant with respect to a cause of action by an amount equal to one of the following, as elected by the defendant:

     (1)  the sum of the dollar amounts of all settlements;  or

     (2)  a percentage equal to each settling person's percentage of responsibility as found by the trier of fact.

    (d)  An election made under Subsection (c) shall be made by any defendant filing a written election before the issues of the action are submitted to the trier of fact and when made, shall be binding on all defendants.  If no defendant makes this election or if conflicting elections are made, all defendants are considered to have elected Subsection (c)(1).

    (e)  This section shall not apply to benefits paid by or on behalf of an employer to an employee pursuant to workers' compensation insurance coverage, as defined in Section 401.011(44), Labor Code, in effect at the time of the act, event, or occurrence made the basis of claimant's suit.



APPENDIX TAB 11



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00137-CV

_____

## IN RE LEWIS CASING CREWS, INC.

## Original Mandamus Proceeding

### M E M O R A N D U M   O P I N I O N

Relator, Lewis Casing Crews, Inc., filed this mandamus proceeding after the trial court issued an order denying its motion for designation of Diamond D Slickline Service Company, Inc. as a responsible third party pursuant to Section 33.004 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.004 (West Supp. 2013). We conditionally grant relief.

This is a personal injury case brought by Real Party in Interest, David G. Tinnie, arising from an incident that occurred on a drilling rig. Tinnie was employed by Diamond D, and he allegedly was acting in the course and scope of his employment at the drilling rig when the incident occurred. Tinnie alleged that he was injured when a "winch line with an attached lifting hook" was dropped or

fell off the rig and struck him. Tinnie sued Lewis Casing; Viking Drilling, L.L.C.; BNB Consulting & Services, Inc.; Energen Resources Corporation; and Schlumberger Limited. Tinnie alleged negligence and gross negligence claims against the defendants, and he sought to recover damages in excess of $1,000,000.

Lewis Casing filed a motion for designation of responsible third party in which it sought leave to designate Tinnie's employer, Diamond D, as a responsible third party. Lewis Casing alleged that Diamond D's negligence was the cause or a contributing cause of any alleged harm to Tinnie. Tinnie filed a timely objection to the motion for designation. He asserted that the trial court should deny the motion on the ground that Lewis Casing "ha[d] not pled sufficient facts concerning the alleged responsibility of [Diamond D] to satisfy the pleading requirements of the Texas Rules of Civil Procedure."

Lewis Casing filed a supplement to its motion for designation. The supplement included additional allegations related to Diamond D's alleged responsibility for the accident. The trial court conducted a hearing on Lewis Casing's motion. At the hearing, Tinnie's counsel asserted that the motion to designate was "premature" because the case was in its early stage with a lack of discovery. After hearing the arguments from counsel, the trial court stated, "No, I think the motion is premature. Your motion is denied." The trial court entered a written order denying the motion. The trial court did not grant Lewis Casing leave to replead.

Lewis Casing filed a motion in which it requested the trial court to reconsider its ruling. Alternatively, Lewis Casing requested leave to replead. The trial court entered an order denying the motion to reconsider.

Lewis Casing has filed a petition for writ of mandamus to challenge the trial court's order denying Lewis Casing's motion for designation of Diamond D as a responsible third party. In its sole issue, Lewis Casing contends that the trial court

2

clearly abused its discretion by denying the motion, and Lewis Casing also contends that it has no adequate remedy by appeal.

To obtain mandamus relief, a relator must show both a clear abuse of discretion by the trial court and the lack of an adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992). A court abuses its discretion when it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *In re NITLA S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (orig. proceeding). Whether a remedy by appeal is adequate depends heavily on the circumstances presented. *Prudential*, 148 S.W.3d at 136–37; *In re Estate of Hutchins*, 391 S.W.3d 578, 583 (Tex. App.—Dallas 2012, orig. proceeding). An appellate remedy is not inadequate merely because it may involve more cost or delay than obtaining mandamus relief. *Walker*, 827 S.W.2d at 842.

Under the Texas proportionate responsibility statute, a responsible third party is "any person who is alleged to have caused or contributed to causing in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these." Civ. Prac. & Rem. § 33.011(6) (West 2008). The proportionate responsibility statute provides a framework for apportioning percentages of responsibility in the calculation of damages in any case in which more than one person, including the plaintiff, is alleged to have caused or contributed to cause the harm for which recovery of damages is sought. *Id.* § 33.003; *Challenger Gaming Solutions, Inc. v. Earp*, 402 S.W.3d 290, 292–93 (Tex. App.—Dallas 2013, no pet.).

Section 33.004(a) of the Civil Practice and Remedies Code provides that "[a] defendant may seek to designate a person as a responsible third party by filing a motion for leave to designate that person as a responsible third party." Civ.

3

PRAC. & REM. § 33.004(a). The defendant must file the motion at least sixty days before the trial date unless the court finds that good cause exists to allow the motion to be filed later. *Id.* A court must grant the motion unless another party files an objection within fifteen days after the date the motion is served. *Id.* § 33.004(f).

Where, as in this case, an objection to the motion is timely filed, the court is required to grant leave to designate the party named in the motion as a third party, unless the objecting party establishes the following: "(1) the defendant did not plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirement of the Texas Rules of Civil Procedure; and (2) after having been granted leave to replead, the defendant failed to plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirements of the Texas Rules of Civil Procedure." *Id.* § 33.004(g). In determining whether to grant a motion for leave to designate a responsible third party, a trial court is restricted to evaluating the sufficiency of the facts pleaded by the movant and is not permitted to engage in an analysis of the truth of the allegations or consider evidence on the third party's ultimate liability.[1] *In re Unitec Elevator Servs. Co.*, 178 S.W.3d 53, 62 (Tex. App.—Houston [1st Dist.] 2005, orig. proceeding).

Lewis Casing contends that it pleaded sufficient facts concerning the alleged responsibility of Diamond D and that, therefore, the trial court clearly abused its discretion when it denied the motion. Tinnie contends that Lewis Casing's

---

[1]A party may challenge the sufficiency of the evidence to support the designation of a responsible third party after there has been adequate time for discovery in a case. CIV. PRAC. & REM. § 33.004(*l*). Specifically, "a party may move to strike the designation of a responsible third party on the ground that there is no evidence that the designated person is responsible for any portion of the claimant's alleged injury or damage." *Id.* The court is required to grant the motion to strike "unless a defendant produces sufficient evidence to raise a genuine issue of fact regarding the designated person's responsibility for the claimant's injury or damage." *Id.*

4

allegations were insufficient to satisfy Section 33.004(g). Accordingly, Tinnie contends that the trial court did not abuse its discretion when it denied the motion.

The issue before the trial court at the hearing on Lewis Casing's motion for designation was whether Lewis Casing had pleaded "sufficient facts concerning the alleged responsibility of [Diamond D] to satisfy the pleading requirement of the Texas Rules of Civil Procedure." CIV. PRAC. & REM. § 33.004(g)(1). Texas follows a "fair notice" standard for pleading. *Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007). Rules 45 and 47 of the Texas Rules of Civil Procedure require that pleadings give fair notice of the claim asserted. *Paramount Pipe & Supply Co. v. Muhr*, 749 S.W.2d 491, 494 (Tex. 1988). The "fair notice" standard for pleading is satisfied if the opposing party can ascertain from the pleading the nature, the basic issues, and the type of evidence that might be relevant to the controversy. *Low*, 221 S.W.3d at 612. A petition is sufficient if a cause of action or defense may be reasonably inferred from what is specifically stated. *McGraw v. Brown Realty Co.*, 195 S.W.3d 271, 275 (Tex. App.—Dallas 2006, no pet.).

Tinnie alleged in his petition that each of the defendants committed acts and omissions that constituted negligence and gross negligence and that those acts and omissions were a proximate cause of the incident in question and the injuries and damages that he sustained and suffered. Lewis Casing alleged in its motion for designation that Diamond D failed to provide adequate safety training, equipment, and employee supervision and that Diamond D failed to create and maintain a safe work environment for Tinnie. Lewis Casing also alleged that "[Diamond D's] negligence was the cause or contributing cause of any alleged harm to [Tinnie]." Lewis Casing alleged in its supplemental motion that Diamond D failed to exercise ordinary care and that Diamond D's failure to exercise ordinary care was a proximate cause of the accident in question. Additionally, Lewis Casing alleged that, under the doctrine of respondeat superior, Diamond D was vicariously liable

for the negligent acts and omissions of its supervisors. Lewis Casing alleged that the supervisors and Tinnie were negligent in a number of respects, including that they failed to follow instructions that they had been given; that, contrary to instructions, they did not wait to begin their work until all work above them on the rig was concluded; that they failed to keep a proper lookout; that they failed to delay or stop their work until it could proceed safely; and that they failed to sufficiently communicate with other workers on site in an effort to ensure that Diamond D's work could proceed in an orderly and safe sequence.

Lewis Casing specifically alleged that Diamond D's negligence caused or contributed to cause the harm for which Tinnie sought recovery of damages. We conclude that Lewis Casing's allegations concerning the alleged responsibility of Diamond D are sufficient to satisfy the fair-notice pleading requirement; an opposing party can ascertain from the allegations the nature and basic issues of the controversy and what type of evidence might be relevant. The trial court apparently denied Lewis Casing's motion to designate Diamond D as a responsible third party on the ground that the motion was "premature." However, "pre-maturity" is not a proper ground to deny a motion to designate a responsible third party. Instead, a motion to designate a responsible third party may be denied only if a defendant fails to plead sufficient facts after the defendant has been granted leave to replead. CIV. PRAC. & REM. § 33.004(g). Because Lewis Casing's allegations provided fair notice of its claim, we conclude that the trial court clearly abused its discretion when it denied Lewis Casing's motion for designation of Diamond D as a responsible third party.

We next address whether Lewis Casing has an adequate remedy by appeal. Texas intermediate appellate courts have reached different conclusions on the issue of whether there is an adequate remedy by appeal from a trial court's erroneous denial of a motion for leave to designate a responsible third party. Several courts

6

have granted mandamus relief from a trial court's erroneous ruling on an issue related to the designation of a responsible third party. *See, e.g.*, *In re Smith*, 366 S.W.3d 282, 288–89 (Tex. App.—Dallas 2012, orig. proceeding); *In re Brokers Logistics, Ltd.*, 320 S.W.3d 402, 408–09 (Tex. App.—El Paso 2010, orig. proceeding); *In re Arthur Andersen LLP*, 121 S.W.3d 471, 485–86 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding). Other courts have denied mandamus relief based on the conclusion that the relators failed to show the lack of an adequate remedy by appeal. *See, e.g.*, *Unitec Elevator*, 178 S.W.3d at 63–66; *In re Martin*, 147 S.W.3d 453, 460 (Tex. App.—Beaumont 2004, orig. proceeding). Based on our analysis, and as discussed below, we agree with the sound reasoning of those courts that have concluded that there is no adequate remedy by appeal in such cases. *See Brokers Logistics*, 320 S.W.3d at 408–09; *Andersen*, 121 S.W.3d at 485–86.

Tinnie argues that mandamus relief should be granted from a trial court's erroneous denial of a motion to designate a responsible third party only in "rare, highly complex" cases that involve the type of "extraordinary circumstances" that were present in *Andersen*, which involved the "enormity of the facts surrounding the collapse" of Enron. *Andersen*, 121 S.W.3d at 486. Tinnie relies on *Unitec Elevator* to support his argument. In *Unitec Elevator*, the court characterized the case before it as a "relatively straightforward personal injury action." *Unitec Elevator*, 178 S.W.3d at 65. Because the case did not present extraordinary circumstances such as those that were presented in *Andersen*, the *Unitec Elevator* court concluded that the relators had an adequate remedy by appeal. *Id.* at 65–66.

Tinnie contends that, unlike *Andersen*, this case does not involve extraordinary circumstances because "[t]he case at bar is a straightforward negligence matter" and "is not an overly complex case." Based on these contentions, Tinnie asserts that Lewis Casing has an adequate remedy by appeal.

7

We disagree with Tinnie's assertion that mandamus relief should be limited to those cases that involve circumstances similar to those involved in *Andersen*. Courts have not limited grants of mandamus relief to such cases. *Smith*, 366 S.W.3d at 288–89; *Brokers Logistics*, 320 S.W.3d at 408–09. Additionally, although Tinnie contends that this case is a straightforward negligence matter, the record shows that he has sued five sophisticated business defendants, and he seeks to recover in excess of $1,000,000 in damages. The case will involve extensive discovery; the liability and damages issues likely will be hotly contested; a trial would be lengthy; and if the case goes to trial, the trier of fact will be asked to apportion liability, if any, among the parties.

The adequacy of an appellate remedy must be determined by balancing the benefits of mandamus review against the detriments. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding). In evaluating benefits and detriments, we consider whether mandamus review will preserve important substantive and procedural rights from impairment or loss. *Id.* Under the proportionate responsibility statute, Lewis Casing has the right to have one jury apportion liability among all responsible parties. *See* CIV. PRAC. & REM. § 33.003(a); *Brokers Logistics*, 320 S.W.3d at 408; *Andersen*, 121 S.W.3d at 485–86. A grant of mandamus relief would preserve Lewis Casing's valuable right to have the trier of fact determine Diamond D's percentage of responsibility for Tinnie's injuries and damages. *Brokers Logistics*, 320 S.W.3d at 408.

This case is distinguishable from *Martin*, in which the Beaumont Court held that an adequate appellate remedy existed. *See Martin*, 147 S.W.3d at 459–60. In that case, the court noted that, based on the facts before it, "a separate post-judgment lawsuit for contribution is an available remedy." *Id.* at 459. Here, Lewis Casing does not have the ability to seek contribution from Tinnie's employer, Diamond D, because Diamond D has provided Tinnie with workers' compensation

benefits.[2] TEX. LAB. CODE ANN. § 408.001 (West 2006); *Lee Lewis Constr., Inc. v. Harrison*, 64 S.W.3d 1, 19 (Tex. App.—Amarillo 1999), *aff'd*, 70 S.W.3d 778 (Tex. 2001).

In addition to impairment of rights, we consider whether mandamus will "allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments." *Team Rocket*, 256 S.W.3d at 262 (quoting *Prudential*, 148 S.W.3d at 136). In this case, the trial court's ruling could be reviewed on appeal if Lewis Casing receives an adverse judgment. However, in order to obtain a reversal, Lewis Casing would be required to show that the trial court's error probably caused the rendition of an improper judgment or probably prevented it from properly presenting the case to the court of appeals. *See* TEX. R. APP. P. 44.1(a). The denial of Lewis Casing's right to designate Diamond D as a responsible third party "would skew the proceedings, potentially affect the outcome of the litigation, and compromise the presentation of [Lewis Casing's] defense in ways unlikely to be apparent in the appellate record." *Brokers Logistics*, 320 S.W.3d at 408; *see also In re Oncor Elec. Delivery Co.*, 355 S.W.3d 304, 306 (Tex. App.—Dallas 2011, orig. proceeding). On such an appellate record, it is possible that Lewis Casing would be unable to obtain relief on direct appeal from the trial court's clearly erroneous ruling. *Brokers Logistics*, 320 S.W.3d at 408. Thus, the trial court's error may not be adequately addressed by an appeal. *Oncor*, 355 S.W.3d at 305.

We must also consider whether mandamus will spare the litigants and the public "the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *Team Rocket*, 256 S.W.3d at 262 (quoting *Prudential*, 148 S.W.3d at 136). There will be a substantial waste of the litigants'

---

[2]An employer that is a subscriber to workers' compensation insurance may be designated as a responsible third party under Section 33.004 of the Civil Practice and Remedies Code. *See Unitec Elevator*, 178 S.W.3d at 58 n.5.

9

time and money if they proceed to trial without the trial court's error being corrected, proceed through a direct appeal only to have the judgment reversed, and then retry the entire case with Diamond D designated as a responsible third party. We recognize that the additional time and expense of participating in a second trial does not, standing alone, justify the issuance of a writ of mandamus. *Walker*, 827 S.W.2d at 842. However, when a trial court's error will cause a waste of judicial resources, an appellate court may properly consider that factor in determining the adequacy of a remedy by appeal. *Id.* at 843; *Brokers Logistics*, 320 S.W.3d at 409. In this case, the potential waste of resources, when combined with the possibility that Lewis Casing may be unable to successfully prosecute an appeal from an adverse judgment, supports the conclusion that Lewis Casing does not have an adequate remedy by appeal. *See Brokers Logistics*, 320 S.W.3d at 409. Therefore, we conclude that Lewis Casing lacks an adequate remedy by appeal.

Because the trial court clearly abused its discretion when it denied Lewis Casing's motion for designation of Diamond D as a responsible third party and because Lewis Casing lacks an adequate remedy by appeal, we sustain the sole issue presented by Lewis Casing in its petition for writ of mandamus. Accordingly, we conditionally grant Lewis Casing's petition for writ of mandamus. The trial court is directed to vacate its March 17, 2014 "Order Denying Defendant Lewis Casing Crews, Inc.'s Motion for Designation of Responsible Third Party" and to enter a new order granting the motion for designation. The writ of mandamus will issue only if the trial court fails to act by July 30, 2014.


July 10, 2014                                                    JIM R. WRIGHT

Panel consists of: Wright, C.J.,                               JUSTICE
Willson, J., and Bailey, J.


10

**APPENDIX TAB 12**

(a)     be by petition and answer;

(b)     consist of a statement in plain and concise language of the plaintiff's cause of action or the defendant's grounds of defense. That an allegation be evidentiary or be of legal conclusion shall not be grounds for objection when fair notice to the opponent is given by the allegations as a whole; and

(c)     contain any other matter which may be required by any law or rule authorizing or regulating any particular action or defense.

Pleadings that are not filed electronically must be in writing, on paper measuring approximately 8 ½ inches by 11 inches, and signed by the party or his attorney. The use of recycled paper is strongly encouraged.

All pleadings shall be construed so as to do substantial justice.


## RULE 46.  PETITION AND ANSWER; EACH ONE INSTRUMENT OF WRITING

The original petition, first supplemental petition, second supplemental petition, and every other, shall each be contained in one instrument of writing, and so with the original answer and each of the supplemental answers.


## RULE 47.  CLAIMS FOR RELIEF

An original pleading which sets forth a claim for relief, whether an original petition, counterclaim, cross-claim, or third party claim, shall contain

(a)     a short statement of the cause of action sufficient to give fair notice of the claim involved;

(b)     a statement that the damages sought are within the jurisdictional limits of the court;

(c)     except in suits governed by the Family Code, a statement that the party seeks:

(1)     only monetary relief of $100,000 or less, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees; or

(2)     monetary relief of $100,000 or less and non-monetary relief; or

(3)     monetary relief over $100,000 but not more than $200,000; or

(4)     monetary relief over $200,000 but not more than $1,000,000; or

(5)     monetary relief over $1,000,000; and

(d)     a demand for judgment for all the other relief to which the party deems himself entitled.

Relief in the alternative or of several different types may be demanded; provided, further, that upon special exception the court shall require the pleader to amend so as to specify the maximum amount claimed.  A party that fails to comply with (c) may not conduct discovery until the party's pleading is amended to comply.

Comment to 2013 change: Rule 47 is amended to require a more specific statement of the relief sought by a party.  The amendment requires parties to plead into or out of the expedited actions process governed by Rule 169, added to implement section 22.004(h) of the Texas Government Code.  Except in a suit governed by the Family Code, the Property Code, the Tax Code, or Chapter 74 of the Civil Practice & Remedies Code, a suit in which the original petition contains the statement in paragraph (c)(1) is governed by the expedited actions process.  The further specificity in paragraphs (c)(2)-(5) is to provide information regarding the nature of cases filed and does not affect a party's substantive rights.


## RULE 48.  ALTERNATIVE CLAIMS FOR RELIEF

A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he has regardless of consistency and whether based upon legal or equitable grounds or both.


## RULE 49.  WHERE SEVERAL COUNTS

Where there are several counts in the petition, and entire damages are given, the verdict or judgment, as the case may be, shall be good, notwithstanding one or more of such counts may be defective.


## RULE 50.  PARAGRAPHS, SEPARATE STATEMENTS

All averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances; and a paragraph may be referred to by number in all succeeding pleadings, so long as the pleading containing such paragraph has not been superseded by an amendment as provided by Rule 65. Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth.



APPENDIX TAB 13

(c)    reverse the trial court's judgment in whole or in part and render the judgment that the trial court should have rendered;

(d)    reverse the trial court's judgment and remand the case for further proceedings;

(e)    vacate the trial court's judgment and dismiss the case; or

(f)    dismiss the appeal.

## 43.3.Rendition Appropriate Unless Remand Necessary

When reversing a trial court's judgment, the court must render the judgment that the trial court should have rendered, except when:

(a)    a remand is necessary for further proceedings; or

(b)    the interests of justice require a remand for another trial.

## 43.4.  Judgment for Costs in Civil Cases

In a civil case, the court of appeals' judgment should award to the prevailing party the appellate costs — including preparation costs for the clerk's record and the reporter's record — that were incurred by that party. But the court of appeals may tax costs otherwise as required by law or for good cause.

## 43.5.  Judgment Against Sureties in Civil Cases

When a court of appeals affirms the trial court judgment, or modifies that judgment and renders judgment against the appellant, the court of appeals must render judgment against the sureties on the appellant's supersedeas bond, if any, for the performance of the judgment and for any costs taxed against the appellant.

## 43.6.  Other Orders

The court of appeals may make any other appropriate order that the law and the nature of the case require.

### Notes and Comments

Comment to 1997 changes: Former Rules 80(a) - (c) and 82 are merged. Paragraph 43.2(e) allows the court of appeals to vacate the trial court's judgment and dismiss the case; paragraph 43.2(f) allows the court of appeals to dismiss the appeal. Both provisions are new but codify current practice. Paragraph 43.3(a) is moved here from former Rule 81(c). Paragraph 43.3(b), allowing a remand in the interest of justice, is new. Subdivisions 43.4 and 43.5 are from former Rule 82.

### Rule 44.  Reversible Error

## 44.1.  Reversible Error in Civil Cases

(a)    *Standard for Reversible Error.* No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of:

(1)    probably caused the rendition of an improper judgment; or

(2)    probably prevented the appellant from properly presenting the case to the court of appeals.

(b)    *Error Affecting Only Part of Case.* If the error affects part of, but not all, the matter in controversy and that part is separable without unfairness to the parties, the judgment must be reversed and a new trial ordered only as to the part affected by the error. The court may not order a separate trial solely on unliquidated damages if liability is contested.

## 44.2.  Reversible Error in Criminal Cases

(a)    *Constitutional Error.* If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

(b)    *Other Errors.*  Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

(c)    *Presumptions.* Unless the following matters were disputed in the trial court, or unless the record affirmatively shows the contrary, the court of appeals must presume:

(1)    that venue was proved in the trial court;

(2)    that the jury was properly impaneled and sworn;

(3)    that the defendant was arraigned;

(4)    that the defendant pleaded to the indictment or other charging instrument; and

(5)    that the court's charge was certified by the trial court and filed by the clerk before it was read to the jury.

## 44.3.  Defects in Procedure

A court of appeals must not affirm or reverse a judgment or dismiss an appeal for formal defects or irregularities in appellate procedure without allowing a reasonable time to correct or amend the defects or irregularities.

## 44.4. Remediable Error of the Trial Court

(a) *Generally*. A court of appeals must not affirm or reverse a judgment or dismiss an appeal if:

    (1) the trial court's erroneous action or failure or refusal to act prevents the proper presentation of a case to the court of appeals; and

    (2) the trial court can correct its action or failure to act.

(b) *Court of Appeals Direction if Error Remediable*. If the circumstances described in (a) exist, the court of appeals must direct the trial court to correct the error. The court of appeals will then proceed as if the erroneous action or failure to act had not occurred.

### Notes and Comments

Comment to 1997 change: Former Rules 80(d), 81 and 83 are merged. The reversible error standard in subdivision 44.1 is amended to omit the reference to an action "reasonably calculated to cause" an improper judgment, but no substantive change is intended. Paragraph 44.2(a) is amended to limit its standard of review to constitutional errors that are subject to harmless error review. Paragraph 44.2(b) is new and is taken from Federal Rule of Criminal Procedure 52(a) without substantive change. Paragraph 44.2(c) is former Rule 80(d) without substantive change. Subdivision 44.3 is amended to delete the reference to defects of "substance" and to delete the provisions regarding the late filing of the record.

## Rule 45.  Damages for Frivolous Appeals in Civil Cases

If the court of appeals determines that an appeal is frivolous, it may — on motion of any party or on its own initiative, after notice and a reasonable opportunity for response — award each prevailing party just damages. In determining whether to award damages, the court must not consider any matter that does not appear in the record, briefs, or other papers filed in the court of appeals.

### Notes and Comments

Comment to 1997 change: This is former Rule 84. The limit on the amount of the sanction that may be imposed is repealed. A requirement of notice and opportunity to respond is added.

## Rule 46.  Remittitur in Civil Cases

### 46.1. Remittitur After Appeal Perfected

If the trial court suggests a remittitur but the case is appealed before the remittitur is filed, the party who would make the remittitur may do so in the court of appeals in the same manner as in the trial court. The court of appeals must then render the judgment that the trial court should have rendered if the remittitur had been made in the trial court.

### 46.2. Appeal on Remittitur

If a party makes the remittitur at the trial judge's suggestion and the party benefitting from the remittitur appeals, the remitting party is not barred from contending in the court of appeals that all or part of the remittitur should not have been required, but the remitting party must perfect an appeal to raise that point. If the court of appeals sustains the remitting party's contention that remittitur should not have been required, the court must render the judgment that the trial court should have rendered.

### 46.3. Suggestion of Remittitur by Court of Appeals

The court of appeals may suggest a remittitur. If the remittitur is timely filed, the court must reform and affirm the trial court's judgment in accordance with the remittitur. If the remittitur is not timely filed, the court must reverse the trial court's judgment.

### 46.4. Refusal to Remit Must Not Be Mentioned in Later Trial

If the court of appeals suggests a remittitur but no remittitur is filed, evidence of the court's determination regarding remittitur is inadmissible in a later trial of the case.

### 46.5. Voluntary Remittitur

If a court of appeals reverses the trial court's judgment because of a legal error that affects only part of the damages awarded by the judgment, the affected party may - within 15 days after the court of appeals' judgment - voluntarily remit the amount that the affected party believes will cure the reversible error. A party may include in a motion for rehearing - without waiving any complaint that the court of appeals erred - a conditional request that the court accept the remittitur and affirm the trial court's judgment as reduced. If the court of appeals determines that the voluntary remittitur is not sufficient to cure the reversible error, but that remittitur is appropriate, the court must suggest a remittitur in accordance with Rule 46.3. If the remittitur is timely filed and the court of appeals determines that the voluntary remittitur cures the reversible error, the court must accept the remittitur and reform and affirm the trial court judgment in accordance with the remittitur.